## STATE OF MISSOURI, Defendant in Error, *v.* MAX KLINGER, Plaintiff in Error.

1. *Practice, criminal — Jury — Panel, incomplete — Not ground of reversal, when.*— The Supreme Court will not reverse a conviction for murder on the ground that the panel of jurors was not full, where the trial progressed without any objection, and it was not shown that defendant was deprived of the privilege of making the full number of statutory challenges, or that he suffered the least prejudice from the course pursued.

2. *Practice, criminal — Jury — Demand of list of jurors a privilege, and which may be waived.*— In criminal prosecutions, the delivery of a list of jurors to the prisoner forty-eight hours before trial, under section 8, p. 1102, Wagner's Statutes, is a privilege extended to the accused for his benefit, and if he does not make the demand or require the list he is presumed to have waived it.

3. *Practice, criminal — Sanity — Evidence — Testimony of experts, when improper.*— In a murder trial, counsel for defendant put to a medical expert the following question: "When the defendant has been undeniably subject to fits of epilepsy, should he not have the benefit of every reasonable doubt that might arise as to his sanity?" *Held,* that the question was properly ruled out, as it substituted the witness in the place of the court and jury, and made him the judge of the weight and effect of evidence.

4. *Practice, criminal — Evidence — Medical experts, facts being disputed, can only testify on hypothetical facts — Witnesses not experts can not give an opinion from evidence in a cause.*— A medical expert, who has been present during a trial and heard all the evidence, there being no dispute about the facts, may be asked his opinion about the whole matter; but when the facts are disputed, this course of interrogation is inadmissible, and the question should be stated hypothetically. And witnesses not experts may give their opinion, accompanied by the facts existing within their knowledge and observation, but they can not be permitted to give an opinion upon the question whether a hypothetical state of facts would or would not, if true, be evidence of insanity, nor from mere evidence which they have heard other witnesses detail.

5. *Statute, construction of — Insanity — Restraint after acquittal, on ground of.*— The statute restraining prisoners who are acquitted on the ground of insanity, has reference solely to insanity existing at the time of the trial, and then it is a question exclusively for the determination of the court, with which neither the jury nor counsel have anything to do.

6. *Practice, criminal — Counsel should not be permitted to read law to the jury, when.*— Whether counsel will be allowed to read books to the jury, is a matter resting within the discretion of the court; but a court ought never to permit an attorney to read the law to a jury when the inevitable effect would be to mislead.

*Error to St. Louis Criminal Court.*

*W. H. H. Russell*, for plaintiff in error, urged among others the following points:

I. If the defendant was entitled to a panel of forty qualified jurors, he could not waive that right. (Basie v. Ambrose, 28 Mo. 46; State v. Mansfield, 51 Mo. 475; 1 Chit. 401; 11 Ga. 337; 3 Chit. Pr. 50, 51.)

II. It was the duty of the marshal to summon forty qualified and competent jurors, and furnish defendant with a list of their names forty-eight hours before trial.

III. The following question was asked: "When the defendant has been undeniably subject to fits of epilepsy, should he not have the benefit of every reasonable doubt that might arise as to his sanity?" Was this question proper? (See Ray's Juris., §§ 436, 437; Wharton & Stille, §§ 142, 149.) The opinion of medical experts, and of laymen who are familiar with the facts in the case, upon the question of sanity or insanity of the prisoner, were admissible as evidence in the case at bar. (Elwell on Malpractice and Med. Ev. 275, 294; Ray, 607; and see also Doe v. Ryan, 5 Black, Ind., 217; Gibson v. Gibson, 9 Yerg. 329; 2 Ired., N. C., 78; State v. Clark, 12 Ohio, 483; Lester v. Pittsford, 7 Verm. 158; Morse v. Crawford, 19 Verm. 499; 3 Wash. C. C. 580.)

IV. The counsel for the defendant had the undoubted right to read the opinion of the Supreme Court upon the question of insanity, and the weight of certain evidence as to the issue in the case. It was not done to mislead the jury, and could not mislead them. There was no impropriety in the counsel's reading the provisions of the statute touching the custody of insane persons under criminal sentence. (Gen. Stat. 1865, pp. 311, 343, 345.)

*Chas. P. Johnson*, Circuit Attorney, for defendant in error.

WAGNER, Judge, delivered the opinion of the court.

The defendant was indicted in the St. Louis Criminal Court for the killing of one Henry Wider. Upon trial he was found
15—VOL. XLVI.

guilty by the jury of murder in the first degree, and in accordance with the verdict he was sentenced to be hung.

There is no dispute about the commission of the crime, and if the defendant was sane and possessed of capacity which rendered him responsible at the time the act was perpetrated, there is nothing to extenuate it, and it was a most brutal and atrocious murder. The whole defense was based upon the insanity of the accused.

The case was here upon a previous conviction, and the judgment of the lower court was reversed for reasons given in the opinion (43 Mo. 127); and on a re-trial the law was laid down in conformity with the rulings of this court. Several irregularities are now complained of, and exceptions are also taken to the action of the court in excluding testimony. These we will proceed to notice in their order.

It is insisted, as one ground of error, that a full panel of jurors was not summoned, and that a list of the same was not furnished to the defendant forty-eight hours before the trial, as provided by the statute. This objection was not noticed or urged upon the trial, and it was only brought to the attention of the court in a motion for a new trial. The record shows that twelve good and lawful men were duly elected, tried, and sworn to try the cause, and it seems they were mutually satisfactory to both parties.

The statute enacts that the defendant in every indictment for a criminal offense shall be entitled to a peremptory challenge of jurors as follows: "First, if the offense charged is punishable with death, or by imprisonment in penitentiary not less than for life, to the number of twenty, and no more. Second, if the offense be punishable by like imprisonment not less than a specified number of years, and no limit to the duration of such imprisonment is declared, to the number of twelve, and no more." (2 Wagn. Stat. 1102, § 4.) In capital cases the State is entitled to eight peremptory challenges, and a full panel thereof would consist of forty jurors, and it is said that there were not that number. But the trial progressed without any objection, and it is not shown that the defendant was deprived of

the privilege of making the full number of statutory challenges; and it nowhere appears that he suffered the least prejudice from the course that was pursued. And when such is the case this court will not reverse. (State v. Hays, 23 Mo. 287.)

As to the point that the list was not delivered to the prisoner forty-eight hours before the trial, we see no error in the ruling of the court in refusing the motion on that ground. The delivery of the list is an absolute and positive requirement only when the prisoner demands it.

The eighth section of the chapter in the statute above referred to provides that a list of the jurors summoned shall be delivered to the defendant in the cases specified in the first two subdivisions of the fourth section at least forty-eight hours before the trial, and in other cases before a jury is sworn, if such list be required. It is simply a privilege which the statute extends to the accused for his benefit, and if he does not make the demand or require the list he is presumed to have waived it.

In the course of the examination of one of the medical witnesses as an expert, the counsel for the defense asked this question: "When the defendant has been undeniably subject to fits of epilepsy, should he not have the benefit of every reasonable doubt that might arise as to his sanity?" This question was objected to and the objection sustained, and an exception was taken to the ruling of the court.

The action of the court was so obviously correct and proper that it requires no process of reasoning to justify it. The question proposed substituted the witness in place of the court and jury, and made him the judge of the weight and effect of the evidence.

The defense then called two witnesses, J. H. Conn and Groshon. It seems that Conn was foreman of the jury when the defendant was previously tried, and he was asked his opinion as to the sanity of the defendant at the time of the homicide. The witness was not called as an expert, and the attorney for the defense stated that he desired to prove by him his opinion based upon the facts in the case and the witness's knowledge of the defendant. It is not shown that the witness knew anything

in regard to the condition of the defendant, except as he learned it from his connection with the previous trial. The testimony was ruled out.

Substantially the same question was put to Groshon, who was on the grand jury after the indictment was found, and who stated that the grand jury visited the jail and called the defendant out of his cell, and that he asked him some questions and felt of his head ; and that, as he took some interest in him, he went back afterward to see him. This was all the knowledge that he had of the defendant. The court also refused to permit him to answer the question.

Medical men, who are scientific and possessed of professional skill, are allowed to testify as experts, and give their opinion as to the sanity or insanity of a prisoner. So those who are not professional men are permitted to testify and give their opinion under certain circumstances. But the manner of conducting the examination, and the facts whence the witnesses draw their inferences or conclusions, are essentially different. The medical expert gives to the jury the result of his professional skill, science, and learning. His opinions are brought to their assistance, but they are not conclusive upon the jury, and they may give them such weight as they deem they are entitled to, and no more.

If the expert has been present in court, and has heard all the evidence, and there is no dispute about the facts, he may then be asked his opinion about the whole matter. But when the facts are disputed, this course of interrogation *is inadmissible*, and the question should be stated hypothetically. In The State v. Windsor, 5 Harring. 512, and Conn v. Rogers, 7 Metc. 500, the following was held to be a proper form of question to be put to an expert: " You have heard all the evidence in this case ; supposing the jury to be satisfied that the facts and circumstances testified to by the other witnesses are true, what is your opinion, as a medical man, of the state of the prisoner's mind at the time of the commission of the alleged crimes? Was the prisoner, in your opinion, at the time of doing the act, under any and what kind of insanity or delusion, and what would you expect would be the conduct of a person under such circumstances? "

State of Missouri v. Klinger.

Witnesses who are not experts may be permitted to state whether they deem the prisoner to be insane, but it can only be done in connection with their statements of the particular conduct and expressions which form the basis of their judgment. They may give their opinion, accompanied with the facts existing within their own knowledge and observation, but they can not be permitted to give an opinion upon the question whether a hypothetical set of facts would or would not, if true, be evidence of insanity, nor from mere evidence which they have heard other witnesses detail. The two witnesses whose evidence was rejected were not experts, nor did they possess the requisite knowledge to enable them to give an opinion.

The remaining objections relate to the action of the court in refusing to let the counsel read to the jury certain sections of the statute and a former decision of this court, and proceed to comment on them to the jury. Whilst the counsel for the defense was summing up, he referred to sections 43 and 45 of the chapter in the statute in reference to the lunatic asylum, and went on to say to the jury that if they entertained a reasonable doubt as to the sanity of the defendant at the moment of the homicide, they should give him the benefit of the doubt, and that the law had provided a way by which he might be disposed of, as it would be the duty of the court to issue an order restraining him in custody until he could be sent to the insane asylum. The court interrupted the counsel, and stated that that was a question for the consideration of the court alone, after verdict; that if the defendant were acquitted on the ground of insanity at the time of the commission of the alleged homicide, the court would not make an order to send him to the insane asylum unless satisfied that at the time of the acquittal he was insane; that the court would never make an order to send a sane man to the asylum.

The court, we think, was fully justified in the course it pursued. The conduct of the counsel was unwarranted, and outside of any issue presented in the case.

The statute restraining prisoners who are acquitted on the ground of insanity has reference solely to insanity existing at the time of the trial, and then it is a question exclusively for

the determination of the court, with which neither the jury nor counsel have anything to do.

There was no pretense set up at any time that the defendant was insane when he was arraigned and tried, and the court committed no error, after what had transpired, in stating that it would not send a sane man to the asylum.

The counsel then commenced reading the decision of this court in the case when it was here on a former occasion, for the avowed purpose of showing what opinion this court entertained as to the question of defendant's insanity and the weight of the evidence. In this he was stopped by the judge of the Criminal Court, and not permitted to proceed. When the case was here before, this court gave no opinion in regard to the insanity of the defendant, nor did it venture to intimate anything in relation to the weight of evidence. It only declared that, should the depositions prove what he contended they would, they would have a tendency toward maintaining the issue presented by the defense. Whether counsel will be allowed to read books to the jury is a matter resting within the discretion of the court, but it is very certain that a court ought never to permit an attorney to read the law to a jury from a book when the inevitable effect will be to mislead.

We have now examined every objection which has been raised against the judgment of the court below. They are all trivial, unsubstantial, and without foundation. I have never perused a record where such evident lenity was exhibited toward the accused. The court and the attorney prosecuting for the State allowed him every latitude and indulgence, and he had the benefit of everything that would conduce to his acquittal. His only defense was insanity, and the jury have found that no insanity existed. They could not have found otherwise unless they had disregarded the facts in the case and been governed by that sickly, maudlin sentimentality which of late has become fashionable, and which would grant an immunity to every gigantic criminal on the assumed ground of insanity. The defendant has no reason for complaint; he had a fair trial; his guilt was clear and his conviction just.

Let the judgment be affirmed. The other judges concur.