[No. 2,655.]

# THE PEOPLE OF THE STATE OF CALIFORNIA v. FRANK ANDERSON.

SELF-DEFENSE.—If a gun be pointed at one in a threatening manner, under such circumstances as to induce a reasonable belief that it is loaded and will be discharged, and thereby produce death or inflict a great bodily injury on the person threatened, he will be justified in using whatever force may be necessary to avert the apparent danger, though it may afterward appear that the gun was not loaded.

CONTRADICTORY INSTRUCTIONS.—An erroneous instruction given to the jury at the request of the prosecution, is not cured by a correct one on the same point afterward given at the instance of the defendant, as it is impossible to determine on which of the contradictory instructions the jury acted.

IDEM—NEW TRIAL.—When the instructions on a material point are contradictory a new trial should be granted.

RIGHT OF COUNSEL TO READ LAW TO THE JURY.—As a general rule, the practice of allowing counsel in either a civil or criminal action to read law to the jury, is objectionable, and ought not to be tolerated. There are cases, however, in which it is permissible for counsel, by way of illustration, to read to the jury reported cases or extracts from text books, subject to the sound discretion of the Court, whose duty it is to check, promptly, any effort on the part of counsel to induce the jury to disregard the instructions, or to take the law of the case from the books rather than from the Court.

APPEAL from the District Court of the Sixth Judicial District, Sacramento County.

The defendant was indicted for the crime of murder, in the killing of James Quigley, and was convicted of manslaughter. At the trial the counsel for the defendant read to the jury, to illustrate, and as a part of his argument, the facts and the decision of the Court in the case of *Shorter* v. *The People*, 2 Comst. 197, and in the case of *Granger* v. *The People*, 5 Yerg. No objection was made by the counsel on the other side, but after the jury had been instructed, and whilst they were still in its presence and hearing, the Court, turning to the counsel for the defendant, remarked that such a course was improper conduct on the part of counsel, and would not have been permitted if it had been objected to, and that it was calculated to mislead the jury; stating, also, that the written instructions were the only guide in questions of law, for the jury in the case. The defendant moved for a new trial, and the motion being denied, he appealed from the judgment and from the order denying a new trial. At the January Term, 1872, an opinion was delivered in this case, affirming the judgment, and a rehearing was granted.

The other facts are stated in the opinion.

*Creed Haymond*, for Appellant.

The eighth instruction given by the Court is not law ; it entirely ignores the question of apparent necessity. (*Shorter* v. *People*, 2 Comst. 197.) That the instructions given at the request of the defendant are correct, does not cure the error. (*People* v. *Campbell*, 30 Cal. 312 ; *People* v. *Ramirez*, 13 Cal. 172; *People* v. *Maxwell*, 24 Cal. 14; *Brown* v. *McAllister*, 39 Cal. 577; *People* v. *Valencia*, 43 Cal. 552.)

Counsel have the right to read from text-books or from reported cases, to illustrate their arguments or to show how certain principles of acknowledged law have been applied

in cases similar to the one before the jury. The question is not whether the jury are judges of the law as well as of fact. It is conceded that the jury must be bound by the instructions of the Court upon matters of law. The counsel does not say to the jury: "I read to you the law, and you are bound to recognize that it *is* law and abide by it;" but he reads cases to show how principles of law *have been* applied in former cases, where the *facts* were similar. There is no danger that the jury may be mislead, for they have the written instructions of the Court on all the points of the law in the case, to guide them.

There is direct authority for reading law to juries. (*Queen* v. *Courvoiseier*, 9 Carrington & Payne's R. 362 ; *Commonwealth* v. *Abbott*, 13 Met. 123; *Legg* v. *Drake*, 1 Ohio R. 286; *People* v. *Keenan*, 13 Cal. 584 ; *Commonwealth* v. *Porter*, 10 Met. 283.) We have an abundance of precedents for this course. For cases in which Lord Erskine read to the jury, see Erskine's Speeches, Vol. I, pp. 75, 301, 423, 461, 501, 589. For American precedents, see Moore's American Eloquence, Vol. I, pp. 235, 342, 538, and Vol. II, pp. 242 and 409; Thomas Addis Emmett, in the case of Goodwin, on trial for manslaughter; John Adams and Josiah Quincy, in defense of the British soldiers ; Samuel Dexter and Daniel Webster, in numerous cases exercised this right. Such has been the practice of such distinguished lawyers as S. S. Prentiss, of Kentucky ; of Rufus Choate, Charles O'Conor, James T. Brady, David P. Brown, Henry Clay; and in California, of Baker, Coffroth, Curtis, Hardy, Goodwin, and Cook.

If, then, counsel may illustrate their arguments by reading to the jury from books, was it not grave error on the part of the Court, in this case, to attempt to destroy the whole effect of the argument of defendant's counsel by the remark that the conduct of the counsel was improper and calculated to mislead the jury? Such a remark from the Court could not

but have great influence with the jury, to the prejudice of the defendant. It was equivalent to cautioning the jury to beware of the counsel—that he was imposing upon them, and thus to throw suspicion upon his entire argument.

Again. If the Court deemed the course pursued by counsel wrong, the Court should have stopped him before his time was consumed, so that another line of argument could have been pursued. To wait until the counsel had closed, had no opportunity to again address the jury, and then to strike at his whole argument, was doing a wrong to the prisoner which is contrary to justice and to the whole spirit of the law.

*John L. Love, Attorney General,* for Respondents.

By the Court, Crockett, J.:

The argument on the rehearing in this cause has convinced me that the judgment ought to be reversed. The eighth instruction, given at the instance of the prosecution, was clearly erroneous. In defining the right of self-defense it tells the jury that this right " cannot be exercised in any case, or to any extent not necessary. The party making the defense is permitted to use no instrument and no power beyond what will prove simply effectual." This definition excludes all that class of cases in which the act imputed to the accused was apparently one of necessary self-defense, though as it afterward appeared, he was, in fact, in no danger of suffering a bodily injury. If a gun be pointed at one in a threatening manner, under such circumstances as to induce a reasonable belief that it is loaded and will be discharged and thereby produce death or inflict a great bodily injury on the person threatened, he will be justified in using whatever force may be necessary to avert the apparent danger, though it may afterward appear that the gun was not loaded, and that he was in no danger whatever. In a subsequent portion

of the instruction, the same error is repeated. But in the instructions given at the request of the defendant, the Court correctly and very explicitly states the law on this point. On the first hearing we were of opinion that this cured the omission in the eighth instruction, and rendered it quite improbable that the jury had been misled by it. But on further reflection, I am convinced the instructions are so contradictory that they cannot be reconciled, and the erroneous instruction may very naturally have misled the jury. In the eighth, the jury is told that the right of self-defense cannot be exercised "in *any* case or to any degree NOT NECESSARY, and that the party making the defense is permitted to use no instrument and no power beyond what will prove simply effectual." But in those given at the request of the defense a wholly different rule is laid down, and the jury is informed that if the deceased assaulted the defendant under such circumstances as to create a reasonable apprehension that he was about to suffer a great bodily injury, the defendant "might safely act on such appearances, and kill the assailant, if absolutely necessary to avoid the apprehended danger, and the killing is justifiable, although it might afterward turn out that the appearances were false and there was in fact neither design to do him serious injury nor danger that it would be done." On the one hand the jury is told, in substance, that the danger must have been *real*, and that the right of self-defense cannot be exercised in any case or to any degree *not necessary;* and on the other hand, that it is sufficient if the danger was *apparent*, though it afterward turned out that in fact there was no actual danger and no necessity for the killing. These propositions are contradictory and wholly irreconcilable, and it is impossible to determine on which of them the jury acted. When the instructions on a material point are contradictory there should be a new trial. (*People* v. *Campbell*, 30 Cal. 312; *Brown* v. *McAllister*, 39 Cal. 577; *People* v. *Valencia*, 43 Cal. 552.) For this

error the judgment must be reversed; but as an important point of practice arose in the progress of the trial we deem it best to dispose of it on this appeal.

In summing up the cause the defendant's counsel read to the jury extracts from several reported cases, on which he commented, and the facts of which he compared with those of the case at bar, stating at the time that he read these extracts to illustrate his argument. No objection to this course was made at the time; but after the argument closed the Court stated, in the presence and hearing of the jury, "that such course was improper, and would not have been permitted if it had been objected to; that it was calculated to and might mislead the jury; and stated, at the same time, that the written instructions were the only guide on questions of law for the jury in this case." It further appears, from the bill of exceptions, that the defendant's counsel "argued the case fairly to the jury, and did not attempt or offer to mislead them as to the law of the case, or as to their duty to accept and be bound by the instructions or charge of the Court, and was guilty of no improper conduct, unless the matters hereinbefore stated constituted improper conduct." In this State, it is so well settled as no longer to be open to debate, that it is the duty of the jury in a criminal case to take the law from the Court. The counsel for the defendant not only at the trial admitted this to be the rule, as appears from the bill of exceptions, but concedes it in argument here. He insists, however, that he did not contravene this rule, in reading to the jury, in illustration of his argument, reported cases similar in some points to the case at bar; and claims that he was entitled to do this in order to enable the jury the better to apply the law, as expounded by the Court to the facts of the case. As a general rule, the practice of allowing counsel, in either a civil or criminal action, to read law to the jury, is objectionable, and ought not to be tolerated. Its usual effect is to confuse rather than

to enlighten the jury. There are cases, however, in which it is permissible for counsel, by way of illustration, to read to the jury reported cases, or extracts from text-books, subject to the sound discretion of the Court, whose duty it is to check promptly any effort on the part of counsel to induce the jury to disregard the instructions, or to take the law of the case from the books rather than from the Court. It appears from the bill of exceptions that in this case the counsel kept strictly within the rule, and was not obnoxious to the charge of attempting to mislead the jury, nor guilty of any impropriety whatever. There was, therefore, nothing to justify the comments of the Court, made in the hearing of the jury. But we do not understand the Court as imputing to the counsel any breach of professional propriety in an offensive sense, nor do we think the jury could so have understood it.

Judgment reversed, and cause remanded for a new trial.