TERRITORY, respondent, *v.* HART, appellant.

CRIMINAL PRACTICE ACT — *Right of challenge to grand jurors defined.* — Persons charged with crime have no right to challenge grand jurors for any other causes than those prescribed in sections 119 and 120, division 3, Revised Statutes of Montana. (Secs. 119, 120, div. 3, Comp. Stats. Mont.) Under sections 121 and 122, division 3, Revised Statutes of Montana (secs. 121, 122, div. 3, Comp. Stats. Mont.), such persons, however, may inspect the grand jury before which the charges against them are to be laid, and interrogate the members of that body, within the scope of the statute, as to their qualifications to act.

CRIMINAL PRACTICE ACT — *Right of a person against whom an indictment has been presented to question grand jurors.* — The bringing into court of an indictment properly indorsed according to section 150, division 3, Revised Statutes of Montana (sec. 150, div. 3, Comp. Stats. Mont.), and the filing of the same by the clerk of the court in the presence of the grand jury, are only *prima facie* evidence of the concurrence of twelve or more of the members of said body in the indictment and the person against whom it has been presented has the right before pleading thereto, on a motion to vacate the same properly made, to require the individual grand jurors to be interrogated under oath as to whether or not twelve or more of their number concurred in finding the indictment. Sections 151, 152, 204, 205, 207, and 217, division 3, Revised Statutes of Montana (secs. 151, 152, 205, 206, 208, 218, div. 3, Comp. Stats. Mont.), held applicable. As to the question of whether the act of the Montana legislature (acts of 12th session, p. 57, sec. 1304, div. 5, Comp. Stats. Mont.) contravenes the constitution and laws of the United States in permitting a person who has declared his intention to become a citizen to sit on a jury, the court considered, but declined to decide.

*The disqualification of a juror on the ground of alienage may be waived.* — In the case at bar a juror was challenged on the ground of alienage by the defendant, who, however, suffered him to sit in the case, through a failure to exercise a peremptory challenge. The accused had two peremptory challenges unexhausted when he accepted the jury. *Held,* that the accused thereby waived his right to object to the said juror's having been on the jury. *Territory* v. *Harding,* 6 Mont. 326, cited.

CRIMINAL PRACTICE — *Reading law books to a jury in a criminal case criticised, but not held illegal.* — The court says: "It is only in very rare cases that it would be proper for the court to permit law books to be read to the jury, and in all cases the passages intended to be read should first be submitted to the court for its approval."

*Appeal from District Court, Jefferson County.*

JOHN H. DUFFY, for the appellant.

The court should have permitted defendant to interrogate each and all of the members of the grand jury as to whether they had formed an unqualified opinion of the defendant, and as to whether they had any bias or prejudice against the defendant. *State* v. *Gillick*, 7 Iowa, 287; Wade, C. J., monograph on authority of grand jury, in 4 Crim. Law Magazine; *People* v. *Manahan*, 32 Cal. 68; *People* v. *Jewett*, 3 Wend. 314; 1 Wharton's Am. Crim. Law, 299; 1 Archbold's Crim. Pr. &. Pl. 507, and notes.

The court should have permitted defendant to inquire of the individual members of the grand jury whether twelve of their number had voted for the finding of the indictment. The defendant had a lawful right to ascertain whether the statutory number of grand jurors voted for the finding of the said indictment or not. This could only be done by examining the grand jurors as to that fact.

The juror Julius Doniothy was not a competent person to act as a juror. The statute of Montana Territory making persons who have only declared their intention to become citizens competent jurors, and particularly in a case where the life of the defendant is at stake, is in derogation of the constitution of the United States, which provides that a person shall be tried by a jury of his peers.

By section 1851, Revised Statutes of the United States, the legislative power of the territory extends "to all rightful subjects of legislation not inconsistent with the con-

stitution and laws of the United States." The federal statutes are silent upon the qualification of jurors in the territories. By section 800, Revised Statutes of the United States, in the exercise of federal judicial powers in the states, the competency of jurors is made dependent upon the provisions of the state laws. As a general rule, the powers and privileges conferred by federal statutes upon citizens are not extended to those who have merely declared their intention to become such, except by express language.

If the federal law withholds from such declarants all privileges enjoyed by citizens except where given in express terms, is not a territorial law extending such privileges beyond the point reached by congressional enactment " inconsistent " with the laws of the United States? If so, the territorial act here in question does exceed the powers conferred upon the legislature of Montana, and is therefore void.

The jury by whom defendant was found guilty proceeded without authority, and the verdict was and is a nullity. Both in theory and practice the administration of justice in this country in criminal cases is governed by the same ancient rules of procedure which is declared by Blackstone, thus: " But the founders of the English law have, with excellent forecast, contrived that no man should be called to answer to the king for any capital crime, unless upon a preparatory accusation of twelve or more of his fellow-subjects,—the grand jury; and that the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors indifferently chosen, and superior to all suspicion." 4 Bla. Com. 349, 350.

It was error to permit counsel in his closing argument to the jury to read decisions in the presence of the jury of the English and American courts on the question of

insanity. The jury are to take the law as given by the court.

The charge of the court in the following language, "If all four of the ingredients of willfulness, deliberation, premeditation, and malice exist, it is murder in the first degree," was wrong, and such a definition was erroneous.

The charge of the court defining a reasonable doubt in the following language: "And by reasonable doubt is meant an honest misgiving of your minds as to his guilt, and this misgiving must arise out of the insufficiency of the evidence to satisfy you. If you sometimes feel that he is guilty and at other times that he is not, and your minds thus hesitate and fail to settle to a conclusion, then you have a reasonable doubt, and should acquit. It is only when you are so convinced of defendant's guilt by the evidence that your minds rest easy and entirely satisfied with that conclusion, that you will be justified in convicting,"—was erroneous.

Thomas Joyce, County Attorney, and William H. Hunt, for the respondent.

The only grounds of challenge to an individual grand juror are those prescribed in the statute (sec. 120, p. 305, Rev. Stats. Mont.), and that on the ground of corruption in the selection of jurors, in section 451, page 346. Opinions of the juror, or bias or prejudice, are not involved in any of the causes there enumerated.

The motion "to vacate and set aside the indictment is not based upon any of the grounds in our statute, and cannot be received in this court. *State* v. *Millain*, 3 Nev. 424. The court properly refused to allow the grand jurors to be interrogated as to opinion or bias. This opinion or bias would not be grounds for challenge. See statutes above cited, and 3 Nev. 424; *Case of John Tucker*, 8 Mass. 286; *State* v. *Chavis and McNeall*, 9 Baxt.

197; *Kemp* v. *State*, 11 Tex. App. 174; 4 Crim. Law Mag. 128; *Betts* v. *State*, 66 Ga. 508; 4 Crim. Law Mag. 468, 469; Thompson and Merriam on Juries, 596, 597. If there was any corruption in selecting the grand jury, challenge on that ground would have been sustained; but the fact of corruption would have had to affirmatively appear, and corruption and bias are altogether different.

The record shows there was no challenge to an individual juror. Defendant simply asks certain questions which the court would not allow to be answered. Having failed to challenge at the proper time, defendant is deemed to have waived all objections to the grand jury. Sec. 121, p. 305, Rev. Stats. Mont. The court properly refused to permit defendant to inquire of the individual grand jurors whether twelve of their number had voted for the finding of the indictment. *State* v. *Hamblin*, 47 Conn. 116. There is no law authorizing a grand jury to be polled, and no practice to that effect. 47 Conn. 116. A grand juror cannot be called to impeach the action of that body. Bishop's Criminal Procedure, sec. 874; *People* v. *Naughton*, 7 Abb. Pr. 431. The simple statement of a grand juror could not have been taken against the oaths of the grand jury. There were no affidavits or proof of any kind offered showing irregularity by the grand jury, and none can be presumed. The juror Doniothy was competent. He had declared his intention to become a citizen of the United States, and therefore was competent under our statutes.

The constitution simply declares that the accused shall enjoy the right to a speedy and public trial by an impartial jury. It has nothing about "peers" in its provisions. There is no statute of Montana, or of the United States, requiring a juror to be a citizen. But even if there were, and error was committed, in this case no harm was done defendant; and when he finally accepted the jury, he had left still two peremptory chal-

lenges, which he might have used to get rid of the juror. Where a juror is challenged for cause, and he is permitted to sit through, a failure on the part of defendant to exercise peremptory challenges, when he had them left, the defendant cannot complain of error. *State* v. *Davis*, 41 Iowa, 315; *State* v. *Elliot*, 45 Iowa, 486; *Minich* v. *People*, 9 Pac. Rep. 10; *Wilson* v. *People*, 94 Ill. 306; *Mingin* v. *People*, 54 Ill. 274; *Minnis* v. *Ohio*, 16 Ohio St. 229; *State* v. *Lawler*, 9 N. W. Rep. 698; *Erwin* v. *State*, 29 Ohio St. 189; *State* v. *Brown*, 15 Kan. 400; Proffatt on Jury Trial, 165; *Lum* v. *State*, 11 Tex. App. 483; *People* v. *Hopt*, 9 Pac. Rep. 408; *Conway* v. *Clinton*, 1 Utah, 224; *Lisle* v. *State*, 6 Mo. 426; *Whitaker* v. *Carter*, 4 Ired. 461; *People* v. *McGungill*, 41 Cal. 429; *Stewart* v. *State*, 13 Ark. 720; *Benton* v. *State*, 30 Ark. 328. It was not error to permit the prosecuting attorney to read authorities upon insanity in the presence of the jury. Wharton's Crim. Pl. & Pr., sec. 578; *People* v. *Anderson*, 44 Cal. 65; *Curtis* v. *State*, 36 Ark. 292. The charge of the court was correct as to the ingredients of murder. Wharton on Homicide, sec. 1. And as to " reasonable doubt," the exception of defendant only states a part of the definition. The definition given in the charge is clear and full, and the defendant certainly cannot claim that it was unfavorable to him.

McLEARY, J. This is a case of murder in the first degree, in which the defendant appeals from the sentence of death. He relies upon four alleged errors for a reversal of this judgment, which may be stated as follows: 1. The court refused to permit the defendant to interrogate the grand jurors, at the time they were being impaneled, as to whether they, or either of them, had formed an unqualified opinion of the guilt of the defendant, in regard to the killing of Pitts, and as to whether they, or either of them, had any bias or

prejudice against the defendant. 2. The court should have permitted the defendant to inquire of the individual members of the grand jury, on a motion made to vacate and set aside the indictment, whether or not twelve of their number had voted for the finding of the indictment. 3. The court should have sustained the challenge of the defendant to the trial juror Julius Doniothy, on account of his being an alien, who had only declared his intention of becoming a citizen of the United States, and had not been admitted to citizenship. 4. The court erroneously permitted the counsel for the prosecution, in the course of his argument, to read decisions of the English and American courts to the jury, on the question of insanity. 5. Exceptions were taken to the instructions of the court in regard to the definition of murder, and the reasonable doubt, but these were withdrawn by counsel in his argument.

These several alleged errors will be considered in their order, as presented in the briefs.

1. The statutes of Montana permit defendants, who are in jail, or under bond to answer indictments, to be present in court on the organization of the grand jury, and to interpose challenges to the panel, or to individual grand jurors, who may be objectionable. Rev. Stats. Mont., secs. 121, 122, div. 3. But the causes of challenge are distinctly specified in the statute. A challenge to the panel must be based on the ground "that the same was not drawn in accordance with the essential provisions of the law of this territory." Rev. Stats. Mont., sec. 119, div. 3. A challenge to an individual grand juror may be interposed for any one of five causes, to wit: "1. That the juror is a minor; 2. That he is an alien; 3. That he is insane; 4. That he is the prosecutor on the charge against the defendant; 5. That he is a witness on the part of the prosecution, and has been served with process, or is bound by a recognizance as such." Rev. Stats. Mont., sec. 120, div. 3.

The questions which the defendant proposed to ask the individual grand jurors do not fall within the causes of challenge specified by statute, and were properly excluded. The statute is liberal, fair, and just; and its provisions cannot be extended by the court. In the absence of the statute permitting him to do so, the prisoner would not be allowed to inspect the grand jury before whom his case would have to be examined, much less to interrogate them as to their qualifications to act as such. The defendant has the right, when the questions have not already been put, to ask the questions falling within the scope of the statute, but no others. These questions might be necessary, in order to enable the defendant to interpose a proper challenge, but a question put with any other purpose is improper.

The question as to the rights of persons to challenge individual grand jurors, on the grounds of personal bias, has been variously decided in different states, according to their several statutes; and an eminent text-writer uses the following pertinent language in regard thereto: "But as our grand juries are generally drawn and impaneled to serve in all cases which may require this sort of investigation during a specified period of time, there are reasons why this sort of challenge should not be permitted, growing out of the inconvenience it would produce, and why, therefore, the objection should be restricted to the plea in abatement, or even be disallowed altogether." 1 Bishop's Criminal Procedure, sec. 746, and note 5. This exposition of the law is virtually supported in the following well-considered cases: *State* v. *Chairs*, 9 Baxt. 197; *Kemp* v. *State*, 11 Tex. App. 198, 199; *State* v. *Millain*, 3 Nev. 423, 424; *State* v. *Hughes*, 1 Ala. 655.

In Massachusetts, in 1811, a grand jury was being impaneled, and Story, as *amicus curiæ*, stated that a certain person had been accused of the crime of murder, and

that John Tucker was a neighbor of the accused, had originated the complaint against him, and had most probably formed a strong opinion of his guilt; and that it was therefore unsuitable that he should be sworn of the grand jury. The court, on consideration, said: "If objections of this nature were to be received, the cause of public justice would be greatly impeded. Those who live in the vicinity of persons accused are probably better knowing than others to the general character of the parties and of witnesses; and on this account are perhaps the more proper members of the grand jury, who will derive useful information from their knowledge. If, however, any individual juror should be sensible of such a bias upon his mind that he could not give an impartial opinion, in any case under the discussion of the jury, such juror would feel it his duty, as it would be his right, to forbear giving an opinion, or perhaps to withdraw himself from the chamber while the discussion continued." *In re Tucker*, 8 Mass. 286.

In the trial of Aaron Burr, the right of challenging grand jurors on account of bias was claimed and allowed by Chief Justice Marshall, without opposition; but the practice does not seem to have been generally followed, even in the federal courts.

In a late work on juries, after a very exhaustive discussion of the whole subject, the learned authors say: "In view of the fact that the right of challenge, either to the array or to the poll, did not exist at common law on the part of the prosecution or the accused, it plainly follows that challenges can be taken only for causes specified in the statutes, and by the persons therein named, and the statutes of some states expressly so provide." Thompson and Merriam on Juries, sec. 519.

We have quoted thus largely from the authorities, in order to show that the practice adopted in Montana, though it may differ from that of Pennsylvania and

some other states, accords with that generally prevailing throughout the Union, and is supported by the great weight of authority.

2. As to the second alleged error presented by the appellant, there is no territorial statute which explicitly gives the defendant the right to question the grand jury as to how many of their number concurred in finding the indictment. It is provided in the statutes that "no indictment can be found without the concurrence of at least twelve grand jurors"; and it is enacted in the same section that "when so found, and not otherwise, the foreman of the grand jury shall indorse it thus: 'A true bill. ——, Foreman.'" Rev. Stats. Mont., sec. 150, div. 3. This indorsement is made, by the law itself, at least *prima facie* evidence that twelve or more of the grand jurors have concurred in finding the indictment. And it is further provided that "where there is not a concurrence of twelve grand jurors in finding an indictment, the foreman shall certify, under his hand, that 'no true bill was found'" (Rev. Stats. Mont., sec. 151, div. 3); and further, when indictments are found, the law requires that they should be brought into court by the grand jury, and in their presence presented to the court, and filed by the clerk in open court. Rev. Stats. Mont., sec. 152, div. 3.

It is certainly the plain requirement of the statute that at least twelve of the grand jury should concur in finding the indictment. A charge concurred in, and presented by a less number, is not a legal indictment, and no one should be held to answer for a felony thereupon. The statute law points out methods by which this concurrence shall be ascertained, but are these the only legal methods for ascertaining so important a fact? In some of the districts it is the practice for the trial judge to ask of the grand jury, when an indictment is presented, whether or not twelve or more of their num-

ber concurred in finding the same. In our view, this practice is proper and commendable. Unless the means pointed out by the statute are the only means by which the concurrence of the required number in the finding of the indictment can be ascertained, there certainly can be no objection to the prisoner interrogating the several grand jurors under oath as to this matter. It is not one of the things which they are sworn to keep secret. The fact is certified to by the foreman when he indorses the indictment, "A true bill." It is publicly, though tacitly, declared by each individual grand juror, when the indictment is filed in his presence, and the filing thereof read by the clerk in open court. But it is possible, in spite of all these precautions, that mistakes may occur; for, unless the accused is in jail, the style of the case indorsed on the indictment is not read; and where several indictments are prepared and submitted to the grand jury at the same time, out of a dozen, one which has been ignored might accidentally be indorsed by the foreman, and presented to the court as a true bill. Such mistakes and accidents should be corrected. We are, then, after careful consideration and mature deliberation, of the opinion that the bringing into court of the indictment properly indorsed, and the filing of the same by the clerk in the presence of the grand jury, are only *prima facie* evidence of the concurrence of twelve or more of the grand jurors in the presentment, and that the accused has the right, before pleading thereto, on a motion to vacate the same, properly made, as in this case, to require the individual grand jurors to be interrogated, under oath, as to whether or not twelve or more of their number concurred in finding the indictment. This may be necessary, in capital cases, to prevent fatal errors, and we believe this position to be fully sustained by the preponderating weight of authority in the United States.

It is laid down as an elementary principle by Greenleaf, in his excellent work on evidence. He says: "Grand jurors may also be asked whether twelve of their number actually concurred in the finding of a bill, the certificate of the foreman not being conclusive evidence of that fact." 1 Greenl. Ev., p. 285, sec. 252.

More than sixty years ago the supreme court of Maine, in discussing this question, used the following language: "All the authorities concur that, unless twelve good and lawful men of the grand jury do agree in finding the bill, the indictment is void and erroneous. Now, every grand jury consists of twelve men at least; and, according to our practice, it never does appear whether a greater or less number concurred in finding the bill, because there is no reference to the number in the caption. That twelve did concur is matter of inference merely, from the fact that the bill is regularly signed by the foreman, and delivered into court in the usual manner. Now, for courts to be solemnly resolving, and legal writers of the first eminence to be gravely stating, as matter of settled law, that if twelve at least of the grand jury do not concur in finding the bill the indictment is void and erroneous, seems to be very idle, to say the least of it, if the party interested is not permitted to suggest the fact, and the courts are precluded from inquiring into the subject, or allowing the party to avail himself of the error. How any juror voted is a secret no juror is permitted to disclose; but whether twelve of their number concurred in finding a bill is not a secret of the state, their fellows, or their own. It is a fact they of necessity profess to disclose every time they promulgate their decision upon any bill laid before them. Accordingly we are of opinion that it is proper, under the circumstances of this case, and on the suggestion made by the defendant, for the court to inquire into the truth of the matter laid before them." *Low's Case*, 4 Me.

452, 453; *State* v. *Symonds,* 36 Me. 130; *People* v. *Shattuck,* 6 Abb. N. C. 35.

We do not believe that this right has ever been denied to the accused when properly demanded by him, though under various statutes different modes of presenting the objection have prevailed. It is true, there is one case, decided in Texas during the stormy days of reconstruction, by the military supreme court, in which an accused person was denied this right; but the opinions of that court have ceased to be quoted as authority, and are said to be decisive only of the cases therein tried. The opinion does not quote a single authority to sustain it, and does not seem to us to be well founded in reason. We refer to the case of *State* v. *Oxford,* 30 Tex. 429. The following provisions are found in our criminal practice act, and are more or less applicable to the question under consideration:—

"Sec. 204. At the time the defendant shall be required to answer the indictment, he may move to set the same aside, or he may demur or plead thereto."

"Sec. 205. The indictment shall be set aside by the court in which the defendant is arraigned, upon his motion, in either of the following cases: 1. When it is not found indorsed, or has not been presented as prescribed by this act; 2. When the names of the material witnesses examined before the grand jury are not inserted at the foot of the indictment, or indorsed thereon; 3. When any person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment was under consideration, except those allowed by law."

"Sec. 207. The motion to set aside the indictment must be in writing, subscribed by the party defendant, or his attorney, and must specify clearly the ground of objection to the indictment. If such motion is not made before the defendant demurs or pleads, the

grounds of objection to the indictment, which might be made in such manner, shall be deemed waived."

"Sec. 217. There may be three kinds of pleas to an indictment: a plea of,—1. Guilty; 2. Not guilty; 3. A former judgment of conviction or acquittal of the offense charged, which may be pleaded with or without the plea of not guilty."

It will be seen that this objection to the indictment cannot be presented by a plea thereto, for it does not fall within section 217, just quoted. Then it must be presented by motion. It is true that such a ground for setting aside an indictment is not mentioned in section 205, quoted above, but we do not conceive that the enumeration of the grounds made in that section is intended to be exclusive; and this objection, being of the same general nature, though far more serious than any of those mentioned, may be made at the same stage of the proceedings, and in the same manner. This motion was properly made by defendant before he pleaded to the indictment, and in our opinion it should have been allowed. It may be that the motion could not have been supported by proof; but the defendant ought to have had an opportunity of making an effort to verify it by the evidence of the only persons who could testify in regard to the allegations therein contained, and these were the grand jurors themselves. Such an opportunity was denied him by the ruling of the court, and we cannot say it has not operated to his prejudice; especially in a capital case, when he has been convicted and sentenced to the punishment of death.

If the defendant had omitted to make this motion until after he had demurred or pleaded to the indictment, then, under section 207, above quoted, he would have been deemed to have waived the objection, and the *prima facie* presumption that twelve grand jurors

had concurred in finding the indictment would have become conclusive, and the question, if raised, could not have been considered. But such is not the case in the record here presented. A vital objection to the indictment (if sustained by evidence) was presented at the proper time, and in the proper manner, and the court refused to hear evidence, and disregarded the objection, which is an error requiring the reversal of the judgment in this case.

3. In regard to the challenge interposed to the juror Doniothy, on account of alienage, we must again refer to the statute of this territory, which prescribes the qualifications of trial jurors. The statutory grounds of challenge are found in the Laws of the Twelfth Session, page 54, amending section 286, division 3, Revised Statutes. The qualifications of jurors are found in section 780, division 5, Revised Statutes, on page 571. This latter section (as amended by the Twelfth Session, page 57) reads as follows: "Any male person of lawful age, who is a citizen of the United States, or who has declared his intention to become such, who is a tax-payer, and a *bona fide* resident of the county, shall be competent to serve as a grand or trial juror." The appellant admits that the trial juror was qualified under the statute, but claims that the territorial statute is in contravention of the constitution and laws of the United States, and consequently void. Section 1851, Revised Statutes of the United States, provides that "the legislative power of every territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States." If the article quoted from the territorial statutes is inconsistent with the constitution of the United States, it must be with one of the following provisions, to wit: " The trial of all crimes, except in cases of impeachment, shall be by jury." Art. 3, sec. 2, Const. U. S.

"No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment, or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in the time of war or public danger." Art. 5, Amends. Const. U. S. "In all criminal prosecutions, the accused shall enjoy the right of a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law," etc. Art. 6, Amends. Const. U. S.

These are the provisions of the federal constitution on the subject of juries in criminal cases. If there are any statutes of the United States inconsistent with the statute of Montana above quoted, they have not been called to our attention. But it is insisted that the word "jury," in the constitution of the United States, means such a jury as was required by the common law at the date of the ratification of the constitution by the nine states, which gave it the force and effect of fundamental and supreme law; and it is further contended that a jury at that date meant twelve men, possessing the necessary qualifications, properly selected, and sworn to try the case; and that at that time alienage was a disqualification at common law; and it is contended that as the statute permits a person who has not become a citizen of the United States to serve as a juror, it is, thus far at least, in contravention of the constitution of the United States, and void. In support of this view, we are referred to 3 Bla. Com. 361; 4 Bla. Com. 349, 350; *State* v. *McClear*, 11 Nev. 42–69, and cases there cited; and other authorities. Story on Constitution, and cases cited in notes.

Inasmuch as a court ought never to declare a statute unconstitutional except in a clear case, where the point is absolutely necessary to the decision,—and, as already

stated, the judgment in this case must be reversed for an error already discussed; and because we have not at hand many authorities which ought to be consulted before passing on so important a matter; and for a further reason, which will be presently stated,—we decline to enter into a further examination or discussion of the question presented.

The juror Doniothy, who was challenged on account of alienage, was permitted by the defendant to sit in this case, through a failure to exercise his right of peremptory challenge, the accused having two peremptory challenges unexhausted when he accepted the jury. He thereby waived the objection of alienage, if it were otherwise a good objection, and there was no error of which he could properly complain. It has been repeatedly decided that alienage is a disqualification of a juror which the defendant may waive, either expressly or by failure to object at the proper time. *Territory* v. *Harding*, 6 Mont. 326; *Lum* v. *State*, 11 Tex. App. 483; *Presbury* v. *Commonwealth*, 9 Dana, 203; *State* v. *Elliott*, 45 Iowa, 487; *Benton* v. *State*, 30 Ark. 340–344; *Erwin* v. *State*, 29 Ohio St. 190; *People* v. *McGungill*, 41 Cal. 430.

4. The defendant, as already stated, also relies upon the ruling of the trial court, in permitting the prosecuting attorney to read to the jury decisions of the English and American courts on the question of insanity, as an error which requires the reversal of this cause. The practice is diverse, even in the several districts of this territory, and we have no statute directly regulating the subject. There is also great diversity among the courts of different states. In the states of Tennessee, Louisiana, Massachusetts, Connecticut, and perhaps others, the reading of law to the jury is permitted. Wharton's Pl. & Pr., sec. 578, and notes; Abb. Tr. Ev. 140.

But in California, Georgia, Texas, Virginia, Illinois,

Missouri, and other states, where the jury is required to receive the law from the court, this practice is not permitted. *People* v. *Anderson,* 44 Cal. 70; *McMath* v. *State,* 55 Ga. 303; *Davenport* v. *Commonwealth,* 1 Leigh, 589; *Chicago* v. *McGiven,* 78 Ill. 347; *State* v. *Klinger,* 46 Mo. 224.

Perhaps the correct rule is laid down by English, C. J., in an Arkansas case, as follows: "The court may, in its discretion, permit counsel to read law to the jury in a criminal case, but it is its province to determine whether the law proposed to be read is applicable to the facts of the case. The matter of reading law to the jury, as part of the argument, is under the discretion and control of the court, and its rulings in the matter are not subject to review, unless its discretion is abused to the prejudice of the accused." *Curtis* v. *State,* 36 Ark. 292.

In a California case, Mr. Justice Crockett used the following language in delivering the opinion of the court: "As a general rule, the practice of allowing counsel in either a civil or criminal action to read law to the jury is objectionable, and ought not to be tolerated. Its usual effect is to confuse rather than to enlighten the jury. There are cases, however, in which it is permissible for counsel, by way of illustration, to read to the jury reported cases or extracts from text-books, subject to the sound discretion of the court, whose duty it is to check promptly any effort on the part of counsel to induce the jury to disregard the instructions, or to take the law of the case from the books rather than from the court." *People* v. *Anderson,* 44 Cal. 70, 71.

The statutes of this territory require the court in a criminal case to deliver to the jury a written charge, stating to them all such matters of law as it shall think necessary for their information in giving their verdict. Rev. Stats. Mont., p. 331, sec. 325, div. 3, as amended by Laws 12th Sess., p. 56. Such being the statutory law,

it is only in very rare cases that it would be proper for
the court to permit law books to be read to the jury;
and in all cases the passages intended to be read should
first be submitted to the court for its approval.   A statute
defining the crime for which the prisoner stands in-
dicted might properly be read by counsel to ·the jury
preliminary to commenting thereon, and there may be
other rare cases in which such a practice might be
proper.   But as a general rule, counsel should be con-
fined in their arguments to the law as given in the charge
to the jury by the court, and to the facts as testified to by
the witnesses, and to such illustrations and arguments as
properly and naturally arise therefrom; but any depart-
ure from such a line of discussion can serve no useful
purpose in the administration of justice.

For the error then committed by the court to which
the indictment was returned, in denying the prisoner
the right, on motion properly made and presented, to
inquire into the question of whether or not twelve or
more of the grand jurors concurred in presenting the
indictment, the judgment in this case is reversed, and
the cause is remanded, to be proceeded with in accord-
ance with this opinion.

GALBRAITH, J., concurs.

BACH, J. (*concurring*).   While I concur in tne result
in this case, I am not to be understood as consenting to
that portion of the opinion which declares that the de-
fendant must make his motion to set aside the indictment
because it was not found by twelve of the grand jury
before he pleads to the indictment.   As that question of
practice does not arise in this case, I prefer to express
no opinion upon that point.

With considerable reluctance, and only because of the
overwhelming current of authorities, I concur with that

portion of the opinion which holds that counsel may read to the jury citations from authorities as a part of their argument. It does not seem to me that it is in accordance with the logic of the law to say that a practice which "is objectionable, and ought not to be tolerated," is still a question within the discretion of the presiding judge.

*Judgment reversed.*