[No. G039967. Fourth Dist., Div. Three. Aug. 18, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
GUY SINCLAIR ADAMS, Defendant and Appellant.

## COUNSEL

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOORE, J.**—Guy Sinclair Adams (defendant) was charged by amended information with battery causing serious bodily injury, in violation of Penal Code section 243, subdivision (d) (count one), and with hit and run causing property damage, in violation of Vehicle Code section 20002, subdivision (a) (count two). In addition, the amended information alleged that (1) pursuant to Penal Code sections 667, subdivisions (d) and (e)(2)(A) and 1170.12, subdivisions (b) and (c)(2)(A), defendant had suffered two prior strikes; (2) pursuant to Penal Code section 667, subdivision (a)(1), defendant had suffered two prior serious felony convictions; and (3) pursuant to Penal Code section 667.5, subdivision (b), defendant had suffered four prior prison convictions.

The jury found defendant guilty on counts one and two. The court struck the second strike alleged. It also struck the second prior serious felony conviction. The court sentenced defendant to eight years in state prison on count one, five years for the remaining prior serious felony conviction, and one year for each of three of the prior prison convictions, for a total of 16 years. It also sentenced him to six months in jail on count two, to run concurrently with the sentence on count one.

Defendant appeals. He contends the court gave conflicting jury instructions on the right of self-defense and on citizen's arrest, and thus deprived him of both his right to put on a defense and due process. We affirm. The court properly instructed the jury.

I

FACTS

This matter arises out of a hit-and-run accident on the freeway, an ensuing chase, and ultimately, a fistfight. Certain persons on the scene provided somewhat differing testimony, as follows.

On the morning of March 29, 2007, defendant was driving a van eastbound on the 22 Freeway. He had been up at night, was tired, and fell asleep while driving on the freeway. Passengers in each vehicle testified that the van rear-ended a car ahead of it. One passenger awakened defendant, who testified that he "really didn't know if [he had] actually hit" the car.

Defendant drove around the car ahead of him and got off the freeway. His passengers told him that he had hit a car. Defendant testified that the car followed him and the people in the car were all hollering. Defendant drove to a park, stopped the van, and got out. The driver of the car, John Bui[1] (Bui), and his passengers Trang Bui (Bui's wife) and Abraham Gallegos Cazares (Gallegos), got out of the car. According to defendant, Bui accused him of hitting his car, Bui and Gallegos were uttering racial epithets, and Gallegos had something in his hand, whether a knife or a cell phone, he could not tell. Defendant said there were other Hispanics in the area and he was worried about being jumped.

Defendant raced across the park and crossed the street, but Bui and Gallegos caught up with him. Defendant testified that he offered to pay for the damage to the car, but that Bui swore at him, said, "Stand up and fight like a man," and pushed him. He claimed that Gallegos also shoved him, Bui pushed him a second time, and then Gallegos struck him. Defendant also said that Bui was ready to punch him in the face, but he himself swung at the same time, and hit Bui in the face and Bui went down. He said Gallegos then grabbed him, but he managed to extricate himself and run away.

Gallegos testified to a somewhat different version of events. He said that defendant began running as soon as he got out of the van, before anyone had a chance to talk to him. He and Bui ran after defendant, who was way ahead of them. Gallegos said he did not have anything in his hands. Defendant exited the park and crossed the street. After he got across the street, defendant stopped, looking as though he were too tired to run anymore. Bui caught up with defendant first. Defendant and Bui started yelling at each other. Defendant tried to get away, but Bui stood in front of him and placed his hand on

---

[1] Although Bui uses the name John, his real first name is Hung.

defendant's shoulder. Bui told defendant to stop, but defendant pushed Bui back. Defendant hit Bui in the abdomen. Bui tried to hit back, but was unsuccessful. Defendant hit Bui a second time, punching him in the nose, and Bui fell, hitting his head on the ground. After he hit his head, Bui began shaking.

Defendant then started to get away, according to Gallegos, who said he put his hands on defendant and tried to block his path. Gallegos was afraid defendant was going to attack him, so he let defendant go. The police arrived and Gallegos provided a description of the incident and of defendant. The police picked defendant up at a nearby fast-food restaurant.

Bui was taken to the hospital. When he awoke in the hospital, he remembered driving on the freeway, and then nothing else before waking up. He did not remember being rear-ended, going to the park, or being in a fight with defendant. Bui suffered a concussion and a broken nose.

Officer Jason Nicoletti of the California Highway Patrol interviewed defendant at the police station. Defendant first said that he had been jumped by two people at the park. He denied having been in an accident, having been on the freeway, or even having been in a vehicle. Another officer told defendant that they would stop the interview if he was not going to be truthful. Defendant then admitted that he had rear-ended a car on the freeway, gotten scared and driven away, made it to the park, fled on foot, and made no attempt to exchange insurance information.

II

DISCUSSION

A. *Jury Instructions*

The court provided two jury instructions at issue here, an instruction on self-defense, and an instruction on citizen's arrest. In addition, it provided a response to the jury's question for clarification of the interrelationship between those two instructions. The instructions and the court's responsive clarification are quoted in pertinent part as follows.

(1) *Self-defense*

The court instructed the jury with CALCRIM No. 3470, which provides in part: "Self-defense is a defense to Battery Causing Serious Bodily Injury, Simple Battery, and Simple Assault. The defendant is not guilty of those crimes if he used force against the other person in lawful self-defense. The

defendant acted in lawful self-defense if: [¶] 1. The defendant reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; [¶] AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger . . . ."

### (2) Citizen's arrest

The court also instructed with the following instruction, designated as "INSTRUCTION A": "A private person may arrest another person for a public offense committed or attempted in his presence. [¶] An arrest by a private person is made by actually restraining the person arrested and the person arrested may be subjected to such restraint as is reasonably needed for his said arrest and continued detention. [¶] A violation of Vehicle Code section 20002(a) (Hit and Run with Property Damage) is a public offense. [¶] An individual making a citizen's arrest may use reasonable force to detain the person who has committed a public offense. There is no right to defend against a valid arrest. When a valid citizen's arrest is being made, the person being arrested has a duty not to resist. [¶] If the person making a citizen's arrest uses unreasonable or excessive force while arresting or detaining another, the person being arrested or detained may lawfully use reasonable force to defend himself or herself. . . ."

### (3) Jury request for clarification

The jury submitted the following request for clarification: "What is the legal relationship between citizen's arrest and a claim of self-defense? If J. Bui was engaging in a legal citizen's arrest, can Adams also validly have a claim for self defense?"

The court provided the following response: "A citizen making a citizen's arrest can use reasonable force to detain or arrest the person to be arrested. If the citizen uses excessive force, the defendant has the right to defend himself. This is explained in the instructions. See CALCRIM #3470 and INSTRUCTION A—CITIZEN'S ARREST."

### B. Analysis

Because the court's responsive clarification stated that "[i]f the citizen *uses* excessive force, the defendant has the right to defend himself" (italics added), defendant argues that the jury could have construed the instructions to mean that he had a right to self-defense *only if* Bui and/or Gallegos *actually used* excessive force. In other words, he argues that the instructions negated the

possibility that he was entitled to act in self-defense if he reasonably believed that he was in imminent danger of suffering bodily injury, irrespective of whether excessive force was ultimately used against him. Defendant further claims that the error did, in effect, relieve the prosecution of its burden to prove that he did not act in self-defense, and thus violated his due process rights.

The Attorney General disagrees. He maintains that the jury instructions provided a correct statement of the law. In his respondent's brief, the Attorney General states that "the answer to the jury's question is that, if the jury believed that Bui was attempting a valid citizen's arrest, [defendant] had a duty not to resist, and he had no right of self defense against reasonable force used to effectuate the arrest. He only had a right of self defense against excessive force. That right of self defense . . . applies when a person reasonably believes the threat he may defend against is imminent, even if the threat does not in fact exist."

We issued an order requesting the Attorney General "to file a supplemental letter brief addressing: (1) any additional authority specifically discussing whether an individual being subjected to a citizen's arrest has a right to use self defense not only when excessive force is actually being applied to him, but also when he reasonably believes that the threat of bodily injury or unlawful touching is imminent, even if the threat does not in fact exist; and (2) whether there is a reasonable likelihood that the jury applied the challenged instructions, including the clarification issued by the court, to mean that until the party making the citizen's arrest *actually uses* excessive force against the arrestee, the arrestee may not act in self defense." We gave defendant an opportunity to file a responsive supplemental letter brief, although he chose not to file one.

■ In his supplemental letter brief, the Attorney General was unable to provide a case directly on point with respect to the first issue. However, he correctly summarized the law as follows: "When a peace officer or a private citizen employs reasonable force to make an arrest, the arrestee is obliged not to resist, and has no right of self defense against such force. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1219 [275 Cal.Rptr. 729, 800 P.2d 1159] [addressing arrest by peace officer]; *People v. Fosselman* (1983) 33 Cal.3d 572, 579 [189 Cal.Rptr. 855, 659 P.2d 1144] [addressing arrest by citizen]; Pen. Code, § 834[a].) On the other hand, the use of unreasonable or excessive force to make an arrest constitutes a public offense. (*People v. Soto* (1969) 276 Cal.App.2d 81, 85 [80 Cal.Rptr. 627].) And all persons have a right to prevent injury to themselves by resisting a public offense (Pen. Code, § 692). Moreover, [']a person who uses reasonable force to protect himself [ . . . ] against the use of [ . . . ] excessive force in making an arrest is not guilty of

any crime.['] (*Soto,* at p. 85.) [¶] The right to resist excessive force used to make an arrest is an application of the law of self-defense. (*People v. Curtis* [(1969)] 70 Cal.2d [347,] 356 [74 Cal.Rptr. 713, 450 P.2d 33] . . . .)" The Attorney General, having found no authority to suggest otherwise, emphasized that the rules of self-defense apply equally in the contexts of a citizen's arrest and a peace officer's arrest. We agree. As the foregoing shows, the jury instructions provided a correct statement of the law.

Nonetheless, the jury was unclear as to whether the right of self-defense applied in the citizen's arrest context, and requested clarification on that point. The court replied: "If the citizen uses excessive force, the defendant has the right to defend himself." This made clear that the right of self-defense did apply in the citizen's arrest context, at least when excessive force was being used. The question then, is whether the jury could have construed this instruction to mean that defendant had no right of self-defense until excessive force was actually applied to him. In other words, did defendant have to wait until Bui landed a punch and only then, assuming he was not incapacitated, commence to defend himself?

Based on the jury instructions provided, the answer was "no." That is, the court directed the jury to CALCRIM No. 3470 for a fuller explanation. CALCRIM No. 3470 explained that defendant had a right of self-defense if he "reasonably believed that he was in imminent danger of suffering bodily injury . . . ." In other words, if Bui was making a citizen's arrest, and defendant reasonably believed that Bui was about to land a punch, that is—use excessive force—defendant had a right to defend himself.

■ "In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. [Citation.] Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is ' "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." ' [Citation.] ' "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." ' [Citation.] If the charge as a whole is ambiguous, the question is whether there is a ' "reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' [Citation.]" (*Middleton v. McNeil* (2004) 541 U.S. 433, 437 [158 L.Ed.2d 701, 124 S.Ct. 1830].)

■ Here, the jury instructions may not have been a model of perfection. If the language of instruction A stating that one may engage in self-defense when "the person making a citizen's arrest *uses* unreasonable or excessive force" (italics added) is read in isolation, a question may indeed arise as to

whether the arrestee must wait for the first punch to be landed before defending himself. However, when the jury instructions are read together, the only sensible interpretation is that if the arresting party takes a swing, the arrestee need not suffer the blow before undertaking to defend himself. The instructions specifically state that defendant had a right to act if he "reasonably believed that he was in *imminent* danger." (Italics added.) The words "imminent danger" would be meaningless if construed to mean defendant had to stand passively and take the first punch and only thereafter mount a defense. There is no reasonable likelihood that the jury construed the instructions as so requiring. Jurors are presumed to be intelligent people capable of understanding and correlating jury instructions. (*People v. Carey* (2007) 41 Cal.4th 109, 130 [59 Cal.Rptr.3d 172, 158 P.3d 743].)

Defendant's citation to *People v. Anderson* (1872) 44 Cal. 65 is unavailing. In that case the jury was instructed, on the one hand, that the right of self-defense " 'cannot be exercised in any case, or to any extent not necessary. The party making the defense is permitted to use no instrument and no power beyond what will prove simply effectual.' " (*Id.* at p. 68.) It was instructed, on the other hand, that if one "assaulted the defendant under such circumstances as to create a reasonable apprehension that he was about to suffer a great bodily injury, the defendant 'might safely act on such appearances, and kill the assailant, if absolutely necessary to avoid the apprehended danger, and the killing is justifiable, although it might afterward turn out that the appearances were false and there was in fact neither design to do him serious injury nor danger that it would be done.' " (*Id.* at p. 69.) The court reversed the judgment against the defendant, holding that the jury instructions might well have misled the jury. (*Id.* at pp. 69–70.)

The *Anderson* court observed at the outset that the first instruction "was clearly erroneous." (*People v. Anderson, supra*, 44 Cal. at p. 68.) It further explained: "On the one hand the jury is told, in substance, that the danger must have been *real*, and that the right of self-defense cannot be exercised in any case or to any degree *not necessary*; and on the other hand, that it is sufficient if the danger was *apparent*, though it afterward turned out that in fact there was no actual danger and no necessity for the killing. These propositions are contradictory and wholly irreconcilable, and it is impossible to determine on which of them the jury acted. When the instructions on a material point are contradictory there should be a new trial. [Citations.]" (*Id.* at p. 69.)

In the case before us, however, no instruction standing alone was erroneous, and the instructions when taken together were not irreconcilable. The jury was not instructed, as in *People v. Anderson, supra*, 44 Cal. 65, that on the one hand, defendant had no right to self-defense unless actually

"necessary," but that, on the other hand, he could exercise self-defense if he "apprehended danger." Rather, the jury was instructed that defendant had no right to defend against a valid arrest, but had a right to defend against the use of excessive force, when he "reasonably believed that he was in imminent danger of suffering bodily injury . . . ." The jury was not instructed that the defendant's response actually had to have been proven necessary, when all was said and done.

## C. *Ineffective Assistance of Counsel*

Defendant argues that should this court find his attorney failed to preserve his jury instruction issues for appeal, then a reversal is required due to ineffective assistance of counsel. This argument is moot, inasmuch as we have addressed his jury instruction issues.

### III

### DISPOSITION

The judgment is affirmed.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 2, 2009, S176756.