Filed 7/13/22  In re Sienna B. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## CORT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re SIENNA B., a Person Coming Under the Juvenile Court Law. | |
| | D079535 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. J242867) |
| SIENNA B., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kathleen M. Lewis, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Attorney General, Charles C. Ragland, Meredith S. White and Robin Urbanski, Deputy Attorneys General for Plaintiff and Respondent.

During an altercation at a convenience store, defendant Sienna B., struck the store owner as he attempted to detain her boyfriend for stealing condoms. Based on that incident, the juvenile court made a true finding of battery. (Pen. Code,[1] § 242.)

The primary issue at the adjudication hearing was whether Sienna acted in defense of her boyfriend Richard when she struck the owner. Sienna argued the prosecution bore the burden to prove that she did not act in self-defense or defense of others. Although the "shopkeeper's privilege" (§ 490.5, subd. (f)(1)) gave the owner the right to detain Richard using reasonable force, Sienna maintained that the force he used was unreasonable. In response, the prosecution asserted that Sienna could not have acted in defense of Richard where she reentered the store "looking to start a fight" and was the first to use physical force.

The juvenile court rejected Sienna's defense-of-others theory, agreeing with the People that Sienna's conduct in striking the owner "was retaliatory and not in self-defense and completely escalated the situation." The judge made a passing comment that the owner had "a legal right to detain at least Richard in that situation" before finding the battery charge true.

Sienna appeals, challenging the juvenile court's adjudication and its rejection of her defense as not supported by substantial evidence. In her view, the court made an erroneous implied finding that the force used to detain Richard was reasonable so that it could rely on the shopkeeper's privilege to reject Sienna's right to act in defense of Richard. But viewed in context, we understand the court to have made an independent finding that

---

[1]     Further undesignated statutory references are to the Penal Code.

Sienna did not act in defense of Richard *irrespective* of the shopkeeper's privilege. Because substantial evidence supports *that* finding, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Shoplifting Incident*

In 2019, 14-year-old Sienna, her boyfriend Richard, and Sienna's immediate family entered a convenience store owned and operated by L.M. (owner) and his wife. While Sienna and her mother's boyfriend, Adam, paid for drinks, Richard stole a pack of condoms and was spotted by the owner, who was working behind the register.

As seen in the store's security footage, the owner came out from behind the register and stopped Richard from leaving the store. He yelled at Richard, repeatedly calling him a "mother fucker." Richard immediately handed back the pack of condoms. At this point, the owner pushed Richard backward, apparently to keep him from leaving the store.[2] Richard said to the owner, "[y]ou're threatening me," after which the owner shoved Richard forcefully and replied, "I do, I do, I do."

Hearing the screaming, Sienna and Adam came back into the store to intervene just as Sienna's 12-year-old sister, Bailey, came forward from the back of the store. The family members placed themselves between Richard and the owner, trying to figure out what happened. Sienna grabbed Richard and walked him back a few steps. Bailey offered to pay for the condoms

---

[2] The owner testified that he sought to keep Richard in the store to speak to his parents and that he believed Richard took two boxes of condoms but only returned one. No second box of condoms was recovered by the responding officer.

3

saying, "I have money," then repeatedly pleaded with the owner to stop as he continued to yell expletives.

Finally, when the owner said something else (undecipherable on the video), Sienna stepped forward and struck him on the head.[3] The owner then punched Sienna in the face and shoved Richard, knocking him backward. A brawl broke out between them, and the three were eventually separated by Adam and another customer. Sienna later slapped the owner's wife as the two of them were arguing.

B. *Procedural History*

The Office of the District Attorney filed a petition under Welfare and Institutions Code section 602 alleging two counts of battery under section 242 (one for the owner, one for the wife) and one count of petty theft under section 484 for aiding and abetting Richard.

Sienna's main argument at trial was that she struck the store owner in defense of Richard. In her trial brief, she observed that the prosecution bore the burden of proving that she did not act in self-defense or defense of others. She acknowledged a shopkeeper's right to detain someone suspected of stealing, but noted that a merchant may only use " 'reasonable force' " in doing so. Before trial commenced, Sienna moved to dismiss count 1 (battery of the owner) as a discovery sanction based on the prosecution's failure to turn over past police reports involving the shopkeeper. Denying this request,

_____

[3]    There was conflicting testimony at trial whether this strike was a punch with a closed fist or a slap with an open palm. The prosecution repeatedly referred to it as a punch, but Bailey testified that it was an "open hand." The security footage capturing the incident appears to show an open palm.

the court made a passing comment that there were likely several theft incidents at that convenience store and the owner had a legal right to detain using reasonable force.

During trial, the People largely rested on video evidence of the incident and the owner's testimony. Sienna, for her part, presented witness testimony suggesting that the owner's conduct was excessive in this incident as well as others. A witness testified that the owner's behavior toward the minors was, in his view, "very excessive." Sheriff's deputies testified that he was "known for fighting" and on a different occasion, had pushed a customer who allegedly stole from the store.

The parties returned to the question of force during closing arguments. The People argued Sienna did not act in self-defense or defense of Richard given her actions in reentering the store and throwing the first blow. The defense offered a different view, explaining that Sienna was clearly responding to the threat of the owner touching her, her sister, or Richard unlawfully. Revisiting the trial court's comment at the start of trial, defense counsel reminded the court that while the owner had the right to use force to detain a suspected shoplifter, that force had to be *reasonable*.

After dismissing the theft count for insufficient evidence, the court sustained the battery charges, reasoning as follows:

> "[T]he People have met their burden of proof beyond a reasonable doubt as to each [count]. I think that the first strike from Sienna to [the owner] was retaliatory and not in self-defense and completely escalated the situation. But [the owner] ha[d] a legal right to detain . . . Richard in that situation, so I do find that both of those counts are true, both batteries."

At her disposition hearing, Sienna was judged a ward of the court and placed on probation.

DISCUSSION

Sienna raises only one issue on appeal, and it pertains to the battery count against the store owner. She contends the trial court erred in sustaining the petition against her because it erroneously determined she had no right to defend Richard. According to Sienna, the owner's use of force was unreasonable and therefore not covered by the shopkeeper's privilege. Claiming the trial court rejected her defense-of-others theory by concluding otherwise, Sienna argues the evidence is insufficient to prove beyond a reasonable doubt that she committed the crime of battery.[4]

A.   *Legal Principles*

There are two legal principles at issue in this case—defense of others and the shopkeeper's privilege. We therefore begin by briefly describing each principle, and then explaining how they interact.

Self-defense or, here, the closely analogous principle of defense of others, is a justification for what would otherwise be battery. " ' "To justify an act of self-defense for [a battery under section 242], the defendant must have an honest and reasonable belief that bodily injury is about to be inflicted on him." ' [Citation.] In other words, the defendant's belief must both subjectively exist and be objectively reasonable." (*People v. Brady* (2018) 22 Cal.App.5th 1008, 1014, italics omitted.) "To assess whether a belief was objectively reasonable, 'a jury must consider what "would appear to be necessary to a reasonable person in a similar situation and with similar

---

[4]   The parties agree that the applicable standard of review in this case is substantial evidence. (See *People v. Redmond* (1969) 71 Cal.2d. 745, 755; see also *In re Roderick P.* (1972) 7 Cal.3d 801, 809 [same standard of review in delinquency proceeding as adult criminal trial].)

knowledge." ' " (*Ibid*.) Simply put, a finding of self-defense or defense of others is reliant on a defendant's reasonable belief that they or someone else are about to be physically harmed. Without this apprehension of physical harm, there can be no such claim.

The shopkeeper's privilege is codified in section 490.5, subdivision (f)(1) to (f)(2):

> "(1) A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a *reasonable* manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises. . . . [¶] (2) In making the detention a merchant, theater owner, or a person employed by a library facility may use a *reasonable* amount of nondeadly force necessary to protect himself or herself and to prevent escape of the person detained or the loss of tangible or intangible property." (Italics added.)

In such circumstances, the merchant has a limited privilege to detain the suspected thief, and the alleged thief (or an aider and abettor) has no legal right to resist this detention. But if the owner's force exceeds the bounds of reasonableness, the suspect is then afforded the right to resist an unlawful detention.

In analyzing how these two principles interact, *People v. Adams* (2009) 176 Cal.App.4th 946 (*Adams*) is illustrative. *Adams* considered how a citizen's arrest interacts with a claim of self-defense. (*Id*. at 951–955.) Although the shopkeeper's privilege to detain and a citizen's power to arrest are different, the underlying principle is analogous and can reasonably be extended to this case:

> " 'When a . . . private citizen employs reasonable force to make an arrest, the arrestee is obliged not to resist, and has no right of [self-defense] against such force.

7

[Citations.]  On the other hand, the use of unreasonable or excessive force to make an arrest constitutes a public offense.  [Citation.]  And all persons have a right to prevent injury to themselves by resisting a public offense (Pen. Code, § 692).  Moreover, [']a person who uses reasonable force to protect himself [. . .] against the use of [. . .] excessive force in making an arrest is not guilty of any crime.[']  [Citation.]  [¶]  The right to resist excessive force used to make an arrest is an application of the law of self-defense.  [Citation.]' "  (*Adams,* at pp. 952–953.)

In other words, a merchant has a legal privilege to detain someone suspected of stealing and the supposed thief has no right to resist, so long as the force employed by the merchant remains reasonable.  But if the "defendant reasonably believe[s] that [the merchant] [is] about to . . . use *excessive* force, defendant ha[s] a right to defend [themself or others]."  (*Id.* at p. 953, italics added.)  These same principles apply to the defense of another subjected to unreasonable force employed by a merchant.

B.   *The Trial Court's Finding*

Sienna argues that the trial court did not make "at least an implicit 'finding that she did not act in reasonable defense of another' " because it determined that the owner "had a legal right to detain at least Richard."  In essence, she is suggesting that because the court determined the owner had a "legal right to detain at least Richard," it did not consider Sienna's defense-of-others argument as it viewed her as having no legal right to resist Richard's detention.  (See *Adams, supra,* 176 Cal.App.4th 946.)  She suggests that the court's "failure to carefully consider whether [the owner's] actions exceeded the limits of the shopkeeper's privilege" precluded her from receiving a full evaluation of her defense, and this error "may well have been decisive."

We read the record differently.  The court did not rest its analysis of the defense-of-others claim on the shopkeeper's privilege, but rather made an independent factual finding that the "strike from Sienna to [the owner] was retaliatory and *not* in self-defense and *completely escalated the situation.*"[5] (Italics added.)  Properly read, the record does not indicate that the court failed to adequately consider the applicable standard for the shopkeeper's privilege, but rather, that it decided Sienna's self-defense and related claims on the merits, and then added a passing comment articulating a general principle of law.[6]  The parties each presented their own view of the case—the People claimed Sienna's actions of leaving and then coming back in and throwing the first blow were inconsistent with defense of anyone.  Although the defense offered a different view of the facts, the court accepted the People's characterization.

As an appellate court, we are bound by the applicable standard of review.  Here, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  Substantial evidence is "evidence which is reasonable, credible, and of solid value." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the

---

[5]     We interpret this to include defense of others, namely, Richard.

[6]     After its true finding, the court made a brief comment about the owner having a legal right to detain Richard.  We do not read this comment to indicate that the court made any finding as to whether the force used was reasonable.

9

circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

Here, there is substantial evidence to support the trial court's finding. Sienna left the store, came back in, and separated Richard from the owner. She then stepped forward to strike the owner several seconds later. This is substantial evidence from which a reasonable trier of fact could have concluded Sienna was not defending Richard, but instead was escalating the situation. That the evidence might have supported a different finding[7] does not permit us to reach a different conclusion.

Viewing the evidence in the light most favorable to the judgment below—as we must—the trial court's conclusion that Sienna was not acting in defense of Richard when she struck the owner is sufficiently supported by the evidence in the record.

---

[7]     For example, the court reviewed the surveillance video and immediately before the strike, the owner appeared to say something in a raised voice. It is unclear what exactly the owner said, and in the transcript of the video the comment is noted as "[u]nintelligible." However, Bailey is noted as saying, "Please stop. Leave her [. . . .]" In her testimony, Bailey suggested he threatened that "he was going to kill our whole family." The trial court ultimately rejected the claim that Sienna was acting in defense of Richard or herself.

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

AARON, J.