Filed 4/11/23 P. v. Campbell CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078833 |
| v. | (Super.Ct.No. BLF1900128) |
| DEDRICK LANCE CAMPBELL, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Randall S. Stamen, Judge. Affirmed with directions.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Dedrick Lance Campbell, Jr., set fire to the gas tank on Mason Burton's Jaguar. Burton went outside to confront defendant. Defendant ran into Burton's home and barricaded himself in the bathroom. Police officers entered the home and defendant would not come out of the bathroom; he screamed obscenities at the officers. A police officer finally broke down the bathroom door and defendant threw a full champagne bottle at him, hitting him in the nose. Defendant did not surrender and it took several officers to subdue him by punching him and using a Taser. After defendant was arrested, officers discovered a second car, also belonging to Burton, parked on the street with rags in the gas tank that appeared to have been set on fire. Defendant was found guilty of two counts of attempted arson, assault with a deadly weapon on a peace officer and two counts of resisting arrest.

Defendant claims on appeal that (1) the trial court erred by failing to instruct the jury on self-defense; (2) the trial court erred by failing to consider the sentencing objectives of Senate Bill No. 567 and remand for resentencing is necessary; (3) the trial court improperly found that count 3 was a principal term in light of Assembly Bill No. 518; and (4) the abstract of judgment and minute order from sentencing must be corrected to reflect the oral pronouncement of sentence.

**FACTUAL AND PROCEDURAL HISTORY**

A. PROCEDURAL HISTORY

Defendant was charged by the Riverside County District Attorney's Office in an amended information in counts 1 and 2 with attempted arson (Pen. Code, § 455, subd.

(a))[1]; in count 3 with assault with a deadly weapon, an unopened bottle of champagne, upon a peace officer (§ 245, subd. (c)); and in counts 4 and 5 with resisting arrest (§ 69).[2] It was further alleged that defendant had suffered a prior serious and/or violent felony conviction within the meaning of sections 667, subdivision (c), and (e)(1), and 1170.12, subdivision (c)(1). Defendant was found guilty of all five counts. In a separate court trial, after defendant waived his right to a jury trial, the trial court found that defendant had suffered the prior serious and/or violent felony conviction. Defendant was sentenced to state prison for a total term of 14 years.

B.     FACTUAL HISTORY

On August 20, 2019, Joshua Hampton lived in Blythe and was neighbors with Mason Burton. Burton lived behind Hampton. Their homes were separated by an alley. Burton owned several cars, which he parked either under his two carports or on the street. Two of the cars were a Jaguar, which Burton parked under a carport attached to his house, and a Cadillac.

Around 9:00 p.m. on August 20, 2019, Hampton encountered defendant in the alley between his and Burton's house. It appeared that defendant was trying to get Hampton's dog to bite him. Defendant told Hampton that he was hearing voices.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Although the crime occurred on August 20, 2019, the original information was not filed until January 25, 2021, as the trial court declared a doubt regarding defendant's competency on August 29, 2019, and proceedings were suspended on September 26, 2019. Defendant's competency was found to have been restored on January 23, 2020. The matter was further delayed due to the Covid Pandemic.

3

Hampton was aware that Burton was friends with defendant. Hampton called Burton. Burton came out of his house and told defendant to leave. Defendant left.

Around 3:00 a.m., on August 20, 2019, Blythe Police Officer Gandara was called out to the area of 9th Street in Blythe based on calls of a suspicious male in the residential area. This area was two blocks from the homes belonging to Hampton and Burton. Officer Gandara contacted defendant. Defendant was very agitated and balled up his fists. Officer Gandara asked if he knew anyone in the area. When defendant said he did not, Officer Gandara instructed him to leave the area and defendant complied.

Hampton saw defendant again in the early morning hours. Hampton's dog had been barking so he went out to his backyard. He observed defendant standing near the gas tank of Burton's Jaguar; the Jaguar was on fire. Hampton observed a three-foot flame near the trunk area. Hampton grabbed a fire extinguisher and was able to put out the flames. Defendant climbed inside Burton's Jaguar and sat in the driver's seat.

Hampton called Burton. Burton came outside and yelled at defendant. Defendant exited the Jaguar and ran into Burton's house. Defendant locked himself inside the bathroom. Hampton and Burton tried to get defendant to come out of the bathroom but he refused.

Burton called 911 and advised the operator that one of his "homies" was in his house and that he was "extremely paranoid trippin.' " Burton stated that defendant had tried to set fire to Burton's car and that he was locked in his bathroom. Burton stated that his children were inside the house. Defendant refused to leave the bathroom.

4

At approximately 5:00 a.m. on August 20, 2019, Blythe Police Sergeant Jakobsen responded to Burton's home for a call of a suspect barricaded in the bathroom. Officer Gandara arrived at the same time as Sergeant Jakobsen. Burton met the officers and told them that defendant had barricaded himself in Burton's bathroom. He told them that defendant had tried to set his cars on fire. Burton was afraid for his family. Burton told Officer Gandara that defendant was acting strange. Burton gave the officers permission to enter his house. Officer Gandara believed they had probable cause to arrest defendant based on the arson of the cars.

Sergeant Jakobsen and Officer Gandara entered the home. They spoke with defendant through the closed and locked bathroom door. Officer Belman and a trainee officer arrived and joined Sergeant Jakobsen and Officer Gandara at the bathroom. Burton advised Officer Belman that defendant had gone into the bathroom with a brick and a screwdriver. Burton also gave Officer Belman permission to break the bathroom door down.

Officer Gandara ordered defendant out of the bathroom. Defendant responded that he was not coming out of the bathroom and screamed obscenities at them. He also threatened to blow up himself and the house. Defendant briefly cracked open the bathroom door. Officer Gandara was able to reach in his hand and spray pepper spray into the bathroom. It did not seem to have any effect on defendant.

Officer Gandara was able to break down the bathroom door. Defendant threw out a full bottle of champagne and it hit Officer Gandara in the head and arm. As a result, Officer Gandara had a bruise on his arm and a scratch and swelling on his face. Sergeant

Jakobsen tried to enter the bathroom and defendant used the broken door to push back against him. Sergeant Jakobsen got a cut on his wrist and he sustained a fracture on his index finger as a result of defendant pushing the broken door at him. Sergeant Jakobsen was able to enter the bathroom.

Defendant was partially sitting in the bathtub and his hands were raised in "a fighting stance." Sergeant Jakobsen believed that defendant was going to hit him. Sergeant Jakobsen punched defendant one time in the face as a distraction method. He was able to grab defendant's arm but defendant continued to resist him. Officer Gandara deployed his Taser but only one dart hit defendant and it had no effect on him.

The fourth officer entered the bathroom and was able to hold defendant's left arm while Sergeant Jakobsen held his right arm. Defendant continued to resist, so Officer Belman punched defendant in the face two times. They finally were able to handcuff defendant. Defendant continued to yell obscenities at them but willingly walked outside the house with the officers. A screwdriver was found in the bathroom sink.

Sergeant Jakobsen asked defendant if he was injured and he said he was not. Defendant did not appear to have any injuries. Defendant was taken to the hospital to make sure he was medically cleared to be placed in custody. Officer Belman, who took defendant to the hospital, did not observe any obvious injuries to defendant's face. Blythe Police Officer Mogg took Officer Belman's place at the hospital with defendant. Officer Mogg did not recall that defendant had any major injuries. He received clearance for defendant to be booked into custody. Defendant was able to walk to his patrol vehicle and Officer Mogg did not observe any injuries.

6

Sergeant Jakobsen had been wearing a body-worn camera and the incident was recorded. The jury was shown the video. Defendant said on the video that he was going to kill himself. Officer Gandara also had on a camera and the video was shown to the jury. On the tapes, Officer Gandara encouraged defendant to exit the bathroom so that no one was hurt. Defendant said that he had a knife. Defendant said he was "gonna try to blow myself away" and "I'm going to blow this bitch up." Defendant screamed obscenities at the officers and continued after he was placed in handcuffs.

Officer Gandara inspected the Jaguar, which was parked in a carport near Burton's residence. A large portion of the car was covered in fire retardant. Hampton observed that defendant had put paper and other items in the gas tank of the Jaguar. Further, the next day, Hampton observed a Cadillac that was parked on the street, which he believed belonged to Burton, that had charred paper in the gas tank.

Sergeant Jakobsen explained that an officer used only the amount of force that is necessary to effect the arrest, depending on the amount of force the subject was using. An officer would first announce his or her presence and provide verbal commands. If that was unsuccessful the continuum of force was use of hands, pepper spray, Taser, baton; the last resort was lethal force. Officers Gandara and Belman explained that officers are required to attend training on the use of force every two years. Officer Belman felt that the use of force against defendant was necessary in order to detain him. The officers were concerned he might try to light the house on fire, and that he had a screwdriver in the bathroom. Defendant escalated the situation requiring the officers to escalate the amount of force. It was not necessary to use their batons.

7

Defendant did not present any evidence.

## DISCUSSION

A.      <u>SELF-DEFENSE INSTRUCTION</u>

Defendant insists the trial court erred by failing to instruct the jury on self-defense pursuant to CALCRIM No. 3470[3] for counts 3, 4 and 5.

### 1.     *ADDITIONAL FACTUAL HISTORY*

Defendant requested that a self-defense instruction be given. Defense counsel argued the self-defense instruction was appropriate based on Sergeant Jakobsen testifying that he entered the bathroom and defendant was sitting down with his arms up. Sergeant Jakobsen punched him in the face, which he described as a "distraction blow." Defendant was sitting on the floor when he was hit in the face. Defense counsel argued the resistance by defendant prior to the officers entering the bathroom was reasonable in order to defend himself. Further, the excessive force used by the officers triggered defendant's right to use self-defense.

---

[3] CALCRIM No. 3470 provides in pertinent part, "Self-defense is a defense to *<insert list of pertinent crimes charged>*. The defendant is not guilty of (that/those crime[s]) if (he/she) used force against the other person in lawful (self-defense/ [or] defense of another). The defendant acted in lawful (self-defense/ [or] defense of another) if: [¶] 1. The defendant reasonably believed that (he/she/ [or] someone else/ [or] *<insert name of third party>*) was in imminent danger of suffering bodily injury [or was in imminent danger of being touched unlawfully]; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger."

8

The prosecutor stated that there had to be "substantial evidence" of self-defense. Defendant was sitting on the floor with his hands up after throwing a full champagne bottle at one of the officers and pushing the door into Sergeant Jakobsen, injuring him. There was no evidence that defendant had an honest and reasonable belief that bodily injury was about to be inflicted and he was in imminent harm of being hurt. Defense counsel responded, "Your Honor, I think the substantial evidence is essentially he's punched him in the face while in a sitting position, but I would submit to the Court." The trial court refused the self-defense instruction.

The jury was instructed on the elements of the offense of assault with a deadly weapon on a peace officer. This included that the peace officer was lawfully performing his duties. The jury was also instructed, "A peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone or using unreasonable or excessive force in his or her duties. [CALCRIM No. ]2670 explains when an arrest or detention is unlawful and when force is unreasonable or excessive." It was also instructed on the elements of resisting arrest, which included as an element that "the officer was performing his or her lawful duty." Identical to the wording, *ante*, the jury was instructed to refer to CALCRIM No. 2670.

The jury was instructed with CALCRIM No. 2670, entitled Lawful Performance; Peace Officer, which provided in pertinent part that "The People have the burden of proving beyond a reasonable doubt that Sergeant Jakobsen and Officer Gandara were lawfully performing their duties as peace officers. . . . [¶] . . . [¶] A peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining

9

someone using unreasonable or excessive force when making or attempt[ing] to make an otherwise lawful arrest or detention. [¶] . . . [¶] A peace officer may use reasonable force to arrest or detain someone to prevent escape or to overcome resistance or in self-defense. [¶] If a person knows, or reasonabl[y] should know, that a peace officer is arresting or detaining him, the person must not use force or any weapon to resist an officer's use of reasonable force. However, you may not find the defendant guilty of resisting arrest if the arrest was unlawful, even if the defendant knew or reasonably should have known that the officer was arresting him. [¶] If a peace officer uses unreasonable or excessive force while arresting or attempting to arrest, detaining or attempting to detain a person, that person may lawfully use reasonable force to defend him or herself. [¶] A person being arrested or detained uses reasonable force when he or she, one, uses that degree of force that he or she actually believes is reasonably necessary to protect himself or herself from the officer's use of unreasonable or excessive force; and two, uses no more force than a reasonable person in the same situation would believe is necessary for his or her protection."

### 2. ANALYSIS

We need not consider whether the self-defense instruction should have been given as, based on the other instructions given, the jury would have necessarily rejected such defense rendering any error necessarily harmless under even the stringent beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24.

Here, defendant was charged in count 3 with assault on a peace officer (§ 245, subd. (c)) and in counts 4 and 5 with resisting arrest (§ 69). As stated, the trial court

10

instructed on assault on a peace officer, informing the jury that to find defendant guilty of that offense, the prosecution was required to show, among other things, that "the person assaulted was lawfully performing his or her duties as a peace officer." They were referred to CALCRIM No. 2670 for determining whether Officer Gandara, the victim in count 3, was lawfully performing his duty. The jury was further instructed on section 69 which also required that Officers Gandara and Sergeant Jakobsen were lawfully performing their duties. Again, they were referred to CALCRIM No. 2670. The trial court instructed the jury in accordance with CALCRIM No. 2670 that a peace officer is not lawfully performing his or her duties if he or she is using excessive force. An essential element of both assault on a peace officer and resisting arrest is that the officers did not use excessive force.

" 'When a peace officer or a private citizen employs reasonable force to make an arrest, the arrestee is obliged not to resist, and has no right of self-defense against such force. [Citations.] On the other hand, the use of unreasonable or excessive force to make an arrest constitutes a public offense. [Citation.] And all persons have a right to prevent injury to themselves by resisting a public offense [citation]. . . . [¶] The right to resist excessive force used to make an arrest is an application of the law of self-defense.' " (*People v. Adams* (2009) 176 Cal.App.4th 946, 952-953; see also *People v. Jones* (1981) 119 Cal.App.3d 749, 755-756 ["A person may only resort to force against arresting officers to resist excessive force used during the arrest; in other words, to protect life or limb"].)

11

As such, in order to find defendant guilty in counts 3, 4 and 5, the jury had to conclude that Officer Gandara and Sergeant Jakobsen were lawfully performing their duties at the time they entered the bathroom. In finding defendant guilty of assault on a peace officer and resisting arrest, the jury necessarily determined that Officer Gandara and Sergeant Jakobsen were lawfully performing their duties as peace officers, which meant they were not "using unreasonable or excessive force." Defendant, accordingly, would have no right to self-defense. (*People v. Adams*, *supra*, 176 Cal.App.4th at pp. 952-953.) These findings compel the conclusion that the jury would have found beyond a reasonable doubt that defendant did not act in self-defense had that instruction been given.

Defendant argues that "[s]imply because the jury found [defendant] guilty of resisting arrest does not necessarily mean that they would not have meaningfully considered a defense of self-defense had they been given the opportunity." However, the jury "necessarily" rejected the defense in finding that Officer Gandara and Sergeant Jakobsen did not use excessive force. Defense counsel argued in closing that Sergeant Jakobsen and Officer Gandara used unreasonable excessive force. He argued that the evidence supported that defendant was sitting down when they entered the bathroom and they punched him. The officers were upset that defendant had thrown a champagne bottle at one of them. Defendant was not guilty because they used excessive force. As such, the jury necessarily decided that Sergeant Jakobsen and Officer Gandara did not use excessive force in arresting defendant. It follows that it would have concluded defendant

12

had no right of self-defense. As such, even if the trial court should have instructed the jury on self-defense, any conceivable error was harmless beyond a reasonable doubt.

B.    <u>SENTENCING ISSUES</u>

Defendant contends that Senate Bill No. 567's (stats. 2021, ch. 731, §§ 1.3, 4, 5.15) (SB 567) amendment to section 1170, subdivision (b), which states that aggravating factors must be found true at a court or jury trial beyond a reasonable doubt, requires remand for resentencing in order for the trial court to reconsider his sentence under the new law. The People insist that despite the trial court erroneously relying upon aggravating factors that were not plead and proven by the People as required by section 1170, remand for resentencing is not required as such error was harmless. Defendant further contends the trial court did not understand its discretion under section 654, as amended by Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1) (AB 518), by finding count 3, rather than count 4, as the base term, resulting in a longer sentence.

1.    *SENTENCING PROCEEDINGS*

The People filed a sentencing memorandum. The People recognized that section 1170 had been amended to provide that the presumptive term was the middle term. They argued that the upper term on count 3 was appropriate in this case because the trial court found the aggravating factor that defendant had suffered a prior conviction true at a court trial. The prosecutor also listed five aggravating circumstances under California Rules of Court, rule 4.421, which included that the crime involved great violence, great bodily harm or threat of great bodily harm; the crime involved an attempted or actual taking or damage of great monetary value; defendant's prior convictions as an adult are numerous

13

or of increasing seriousness; defendant had served a prior term in prison or county jail; and his prior performance on probation or parole was unsatisfactory. The probation report listed the same aggravating factors. There were no mitigating factors.

At sentencing, the trial court first denied defendant's *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 motion to strike the prior conviction. In denying the motion, the trial court noted that the Jaguar had been parked in a carport, which was attached to Burton's residence. Defendant set fire to the Jaguar in the middle of the night. Burton, his wife and 10 children were all in the house. Defendant created an extremely dangerous situation.

The trial court then addressed whether to impose the upper term in this case. Defendant's counsel argued that the trial court should not impose the upper term because none of the aggravating factors were plead and proven to the trial court as required by amended section 1170. The trial court asked if defense counsel was arguing that the new laws were retroactive, and defense counsel responded it was his understanding they were retroactive. The prosecutor recognized that section 1170 had been changed and required that the People plead and prove-up by way of a bench or jury trial aggravating factors in order to exceed the middle term. The prosecutor argued the changes were not retroactive.[4]

Defense counsel argued there were several mitigating factors—including his mental health—which warranted imposing the low term and imposing a concurrent term.

---

[4] On appeal, the People agree that the law is retroactive.

14

The prosecutor then noted that the verdict was reached in October 2021 and the changes to section 1170 were effective January 2022. The prosecutor did not know it had to plead and prove the aggravating factors at trial. The prosecutor did note that it had proved the aggravating factor of the prior conviction, which was found true by the trial court. The probation report did not include as a mitigating factor defendant's mental health.

The prosecutor clarified that count 3 was the throwing of the bottle at Officer Gandara; count 4 involved other acts committed while defendant was in the bathroom in resisting Officer Gandara; and count 5 involved resisting Sergeant Jakobsen. The prosecutor stated, "Given the nature of the offense and their independence as it relates to Count 1 and 2, it's the People's position it would be appropriate to impose a consecutive term here, and have those counts run consecutive to the principal in Count 3 for the upper term of five, and to impose 16 months consecutive on Count 5. It's not very clear whether Counts 3 and 4 constitute the same course of events, the same action or occurrence. I think the argument can go both ways." The prosecutor conceded that count 4 should be stayed.

Defense counsel argued that count 1 should be the principal term and that count 2 should be ordered to run concurrent to count 1. The trial court should impose the midterm on count 3. The trial court should stay count 4 and run count 5 concurrent to counts 1 and 3. This would result in a total sentence of six years eight months.

The trial court and the parties spoke off the record regarding whether count 3 should be the principal term. When court resumed, the prosecutor noted that the parties had discussed the impact of AB 518. The prosecutor provided that the trial court could,

in its discretion, choose a different count than count 3. The prosecutor noted, "It's the People's understanding that the Court has considered that option, but given the egregious nature of Count 3, the Court is choosing to maintain that as the principal charge."

Defense counsel argued again that the upper term was not appropriate because the acts all stemmed from defendant struggling with some sort of mental health issues that night. A fair and just sentence would be to impose the midterm on count 3.

The trial court confirmed it was choosing count 3 as the principal term and intended to impose the upper term. It was imposing the upper term based "on the aggravating factors and, in particular, the Court early on mentioned the duration of the incident, the back and forth between the officers, the multiple instances in which defendant could have deescalated the situation further. Additionally, the manner in which the matter was escalated, rather than deescalated, during the encounter. The Court takes into account the body camera footage it viewed. . . . The Court takes into [account] the testimony of each witness, including the witness officer whose body camera footage was not able to be located." The trial court also was taking into account the prior strike conviction that it found true.

The trial court imposed the following sentence: On count 3, the principal term, it imposed the upper term of five years, doubled because of the strike prior, for a total of 10 years; on count 1, the trial court imposed a total of 16 months, which was ordered to run consecutive to count 3; on count 2, the trial court imposed 16 months. which was to run consecutive to counts 1 and 3; count 4 was stayed; and on count 5, the trial court imposed

16

16 months, which was to run consecutive to counts 1, 2, 3 and 5. The total sentence imposed was 14 years to be served in state prison.

After imposing the sentence, the trial court addressed several other pending cases against defendant. Defendant pled guilty to trespassing in another case and was sentenced to 365 days in county jail. Defendant also admitted violating probation in two other cases. Defendant was given 90 days in county jail with time served for each of the probation violations.

      2.    *SB 567*

Defendant insists that none of the factors relied on by the trial court in imposing the upper term sentence on count 3 were the result of a jury or court finding the aggravating factors true beyond a reasonable doubt. Moreover, there is no indication that the trial court would have imposed the upper term sentence if this court were to determine that at least one aggravating factor would have been found true at a jury or court trial. The People concede the trial court erred by relying on aggravating factors that were not plead and proven but that any error was harmless because there was undisputed evidence establishing each of the aggravating factors beyond a reasonable doubt.

SB 567 amended section 1170, effective January 1, 2022. It made several changes to the imposition of upper, middle and lower term sentences. Section 1170, subdivision (b)(1) provides "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." Subdivision (b)(2) provides, "The court may impose a sentence exceeding the middle

17

term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

Subdivision (b)(3) of section 1170 provides, "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury. This paragraph does not apply to enhancements imposed on prior convictions." Subdivision (b)(5) of section 1170 provides, "The court shall set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law. A term of imprisonment shall not be specified if imposition of sentence is suspended."

The changes to section 1170 were in effect at the time of defendant's sentencing. Although the trial court was aware of SB 567, it imposed the upper term based on the "aggravating factors," the duration and escalation of the incident by defendant and based on the prior conviction. None of the aggravating factors were plead and proven at a jury or court trial. As such, reliance on those factors violated section 1170, subdivision (b)(2).

The People insist that the error is harmless. There is a dispute as to the proper standard of review that will ultimately be resolved by the California Supreme Court. (See *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10,

18

2022, S274942). Some courts find that the error is harmless if the reviewing court determines beyond a reasonable doubt that the jury would have found true at least one aggravating circumstance. (*People v. Flores* (2022) 75 Cal.App.5th 495, 500-501; see also *People v. Salazar* (2022) 80 Cal.App.5th 453, 465, review granted Oct. 12, 2022, S275788.) The California Supreme Court has found that one aggravating circumstance can support an upper term sentence. (*People v. Sandoval* (2007) 41 Cal.4th 825, 839 ["[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt-standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the [error is] harmless"]; see also *People v. Osband* (1996) 13 Cal.4th 622, 728 [single aggravating factor is sufficient to support an upper term].)

Other courts have found that the reviewing court considers first whether the jury would have found true beyond a reasonable doubt "*every factor on which the court relied*" beyond a reasonable doubt. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 466; see also *People v. Ross* (2022) 86 Cal.App.5th 1346, 1354-1355.) If every factor is true, then the error was harmless. If not every aggravating factor would be found true, the court considers whether the trial court "*would have exercised its discretion to impose the upper term* based on a single permissible aggravating factor, or even two or three permissible aggravating factors, related to the defendant's prior convictions, when the court originally relied on both permissible and impermissible factors in selecting the upper term. When a trial court increases a defendant's sentence by relying on factors that are inapplicable, duplicative, or improperly weighed, a reviewing court assesses the

19

prejudice to the defendant by determining whether it is reasonably probable[5] that a more favorable sentence would have otherwise been imposed absent the trial court's improper reliance on such factors." (*Lopez*, at p. 468.)

Still, other courts have applied a somewhat different standard from *Lopez*. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1113; see *People v. Dunn* (2022) 81 Cal.App.5th 394, 408-409, review granted Oct. 12, 2022, S275655.) The *Zabelle* court noted, "[S]imilar to *Lopez*, we also apply a two-step process when evaluating for prejudice in these circumstances, with the first step evaluating for *Chapman* error under *Sandoval*'s framework and the second step evaluating for *Watson* error. But unlike the *Lopez* court, we find a reviewing court must *always* evaluate for *Watson* error before concluding that the trial court's error was harmless. True enough, as the *Lopez* court concluded, a defendant has not suffered prejudice if 'a jury would have found true beyond a reasonable doubt all of the aggravating factors on which the trial court relied.' [Citation.] But that is because, in that case, it was not reasonably probable that the trial court would have chosen a lesser sentence had it fully complied with section 1170's requirements. In other words, there was no *Watson* error in those circumstances. All that said, our quibble with *Lopez* is a very minor one. Both our approach and the *Lopez* court's approach are the same in terms of outcomes." (*Zabelle*, at p. 1113, italics added.)

In an abundance of caution, we will follow the two-step approach in *Lopez*. The factors that defendant's convictions were increasing in seriousness or were numerous,

---

**5** This would be the *People v. Watson* (1956) 46 Cal.2d 818 standard.

and that defendant's prior performance on probation was unsatisfactory, would have been found true at a court or jury trial beyond a reasonable doubt. First, the trial court found the prior conviction true after a court trial. The trial court also found defendant was guilty of a new misdemeanor. The trial court had found that defendant had violated probation in two separate cases. These certainly supported the aggravating factor that defendant's prior convictions were numerous. Moreover, defendant admitted to violating probation in two other cases. Accordingly, the aggravating circumstance that defendant's prior probation performance was unsatisfactory, and that defendant's criminal record included numerous convictions, would have been found true beyond a reasonable doubt.

Whether a jury trial or court trial on the remaining factors—the crime involved the threat of great bodily harm, the crime involved damage or attempted damage of great monetary value or defendant served two prior prison terms—would have resulted in a true finding, would be based on pure speculation. The jury could have conceivably concluded that defendant's actions in barricading himself in the bathroom and resisting the arrest by the officers did not constitute the potential for great bodily injury.[6] Further, the jury or court could have concluded that the broken door was not of great monetary value and there was no testimony as to the extent of damage to the cars. There is not a certified record of defendant's prior convictions and the trial court could only rely on the probation report to support that defendant served prior prison terms. (See *People v*

---

[6] The People concede that because the great bodily injury finding in count 3 was an element of the crime and used to aggravate the sentence, it cannot be considered in imposing the greater term.

21

*Zabelle*, *supra*, 80 Cal.App.5th at p. 1114 [only certified record of convictions supports aggravating factors].) We cannot conclude that the court or jury would have found these factors true beyond a reasonable doubt.

The People also rely on the statements made by the trial court regarding defendant escalating the situation and comments made by defendant during the altercation. However, these are not listed as aggravating factors in California Rules of Court, rule 4.421. Based on the foregoing, under *Lopez*, not all of the aggravating factors would necessarily have been found true beyond a reasonable doubt.

We proceed to the second step: whether based on the aggravating factors that would have been found true beyond a reasonable doubt, would the trial court have imposed the upper term sentence? It is reasonably probable that the trial court would have imposed the same sentence even if the trial court only relied on the factor that defendant's crimes were numerous and that his prior performance on probation was unsatisfactory. The trial court refused a lesser sentence, rejecting defendant's request to strike the prior conviction and also imposing consecutive sentences rather than concurrent sentences. The probation report did not list any mitigating factors and the trial court did not state any mitigating factors. Remand for resentencing is unnecessary as the trial court would impose the upper term sentence on count 3 regardless of only two aggravating factors supporting the sentence.

### 3.     *AB 518*

Defendant contends the trial court failed to exercise its discretion under section 654 by choosing count 3 as the base term. Defendant insists remand for the trial court to properly consider whether to select count 4 as the base term and to consider staying count 3 under section 654, as amended by AB 518, is necessary.

AB 518 amended section 654 and was effective January 1, 2022. Before the amendment, former section 654 provided, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment." As amended, section 654 provides, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions." Count 3, assault with a deadly weapon on a peace officer, provides for a sentence of three, four or five years. (§ 245, subd. (c).) Count 4, resisting an officer, has a potential sentence of 16 months, two years or three years. (§§ 69, 1170, subd. (h)(1).)

Here, at the time of sentencing, the trial court acknowledged the changes in section 654. The trial court chose count 3 as the base term based on the egregious nature of the crime. Count 3 involved throwing a full champagne bottle at Officer Gandara, causing injuries. This was after Officer Gandara had tried to deescalate the situation by pleading with defendant to exit the bathroom peacefully so that no one would get hurt. The trial court was aware of its discretion and properly found count 3 as the base term.

23

Defendant contends the trial court could not rely on factors not alleged in the information or found true beyond a reasonable doubt under section 1170, subdivision (b)(2) in choosing the base term. However, defendant provides no authority that section 1170, subdivision (b)(2), applies to a determination under amended section 654. Defendant also contends that despite the trial court not imposing the lowest sentence and refusing to strike the prior strike conviction, if the trial court understood its discretion under amended section 654, it would have likely imposed a lower sentence. This argument presumes that the trial court did not understand its discretion. However, the record supports that the trial court understood its discretion and properly chose count 3 as the base term. Remand for resentencing is not necessary.

## C.     ABSTRACT OF JUDGMENT

Defendant contends the abstract of judgment should be amended to remove the fines and fees. Further, the sentencing minute order should be amended to reflect the trial court refused to strike the prior conviction. The People concede the error and additionally provide that the parole revocation fine imposed pursuant to section 1202.45 should be stricken.

The trial court denied defendant's *Romero* motion to strike the prior conviction. The minute order from sentencing on February 7, 2022, states that the trial court granted the motion to strike. Further, during sentencing, the trial court stated that "The Court does strike all fines and fees in this case. However, I believe there is a $300 parole revocation fee. The Court will go ahead and stay or suspend that, until and unless it is necessary." The abstract of judgment states that the following fines and fees were

24

imposed: a $300 restitution fine pursuant to section 1202.4, subd. (b); a parole revocation fine pursuant to section 1202.45; a $200 fee pursuant to section 1465.8; and a $150 fee pursuant to Government Code section 70373. Further, the sentencing minute order included the fees.

"If the minute order or abstract of judgment is different from the oral pronouncement of judgment, the oral pronouncement controls." (*People v. Mullins* (2018) 19 Cal.App.5th 594, 612.) Therefore, the minute order and abstract of judgment must be corrected to reflect the sentence actually imposed, as stated in the reporter's transcript of the sentencing hearing.

In addition, the People concede that the trial court could not impose a parole revocation fine pursuant to section 1202.45[7] unless it also imposed a restitution fine pursuant to section 1202.4. As such, we will order that the abstract of judgment should be corrected to strike the parole revocation fine.

## DISPOSITION

The superior court is directed to amend the abstract of judgment and sentencing minute order from February 7, 2022, to reflect the oral pronouncement of sentence as stated in this opinion, and to strike the parole revocation fine imposed pursuant to section 1202.45. Further, the superior court is directed to forward a certified copy of the

---

[7] Section 1202.45 provides, "In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4." This additional restitution fine shall be suspended unless the person's parole is revoked.

25

amended abstract to the appropriate authorities.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
Acting P. J.

We concur:

SLOUGH_____
J.

RAPHAEL_____
J.

26